FITZWATER, District Judge:
 

 In this corollary opinion to
 
 Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.,
 
 878 F.Supp. 943 (N.D.Tex.1995), the court addresses claims between plaintiff-counterdefendant Bank One, Texas, N.A. (“Bank One”) and third-party-defendant-third-party counterplaintiff Federal Deposit Insurance Corporation (“FDIC”) concerning ownership of, and rent obligations pertaining to, the furniture, fixtures, and equipment (“FF & E”) at issue. The court holds that Bank One is liable as a tenant at will, beginning March 29, 1989, for the reasonable rental value of the FF & E, in an amount to be determined at trial.
 

 I
 

 The background facts and procedural history of this case are set out in
 
 Bank One, id.
 
 at 947-50. The court repeats them only to the extent necessary to understand today’s decision, adding relevant subsequent events that bear upon the questions the court now decides.
 

 MBank-Dallas, N.A. (“MBank”) entered into a sale-leaseback transaction with Capital Associates International, Inc. (“Capital”). MBank sold the FF & E to Capital. Capital
 
 *536
 
 simultaneously leased the FF
 
 &
 
 E back to MBank and its parent, MCorp, pursuant to a collateralized equipment lease. The parties secured MBank’s performance of the payment of rent and other obligations by means of a Security, Collateral Maintenance and Pledge Agreement. This agreement obligated MBank to pledge certain collateral (the “MCar Proceeds”) (the “MCar Assets”).
 
 Id.
 
 at 947.
 

 In order to finance its purchase of the FF
 
 &
 
 E, Capital obtained a loan from The Prudential Insurance Company of America (“Prudential”). Texas Commerce Bank, N.A. (“TCB”) also participated in the transaction as an indenture trastee. As part of the financing transaction, MBank and Capital entered into a First Amendment to the equipment lease (the “Lease”).
 
 Id.
 
 at 948.
 

 Section 17(h) of the Lease provided that an act or declaration of insolvency constituted an event of default. Section 18 of the Lease afforded Capital various remedies in the event of default.
 
 Id.
 
 Section 18(e) contained a clause (the “Ipso Facto Clause”) that provided that upon an act or declaration of insolvency, (1) the Lease automatically terminated; (2) MBank immediately and unconditionally became obligated to pay all unpaid rent due and payable for all periods up to and including the rent payment due following the event of default; and (3) MBank immediately and unconditionally became obligated to pay forthwith a sum as liquidated damages — the Casualty Value of the Leased Equipment (“Casualty Value”) — determined by a formula prescribed by § 18(e) and attachments to the Lease.
 
 Id.
 
 at 948-49. The remedy automatically took effect without option, notice, or any other action by Capital. Section 18(e) also obligated Capital, immediately upon receipt of MBank’s payment, to execute and deliver to MBank a bill of sale for the FF & E.
 
 Id.
 
 at 948 n. 7.
 

 On March 29,1989 the Office of the Comptroller of the Currency (“OCC”) declared MBank insolvent, placed MBank in receivership, and appointed the FDIC as its receiver.
 
 Id.
 
 The FDIC, as receiver, immediately implemented a Purchase and Assumption (“P & A”) Agreement, by which it transferred all of MBank’s deposits and certain of its assets and liabilities from the MBank receivership estate to the newly-created Deposit Insurance Bridge Bank (“DIBB”).
 
 Id.
 
 at 950. In July 1989 DIBB entered into an interim management agreement, and its name was changed to Bank One, Texas, N.A., the plaintiff in this case. A subsidiary of Banc One Corporation (“BOC”) managed the bank, but the stock of the institution was owned by the FDIC. Through a wholly-owned subsidiary, BOC purchased a percentage of Bank One’s equity in 1990 and, as of October 1991, owned 100% of Bank One.
 
 Id.
 
 at 950 & n. 12.
 

 The FF
 
 &
 
 E remained in MBank’s former facilities, and DIBB/Bank One had access to and possession of most of the FF
 
 &
 
 E in order to continue banking operations without interruption. The P
 
 &
 
 A Agreement did not transfer the Lease to DIBB, but it afforded DIBB an option period (initially 120 days, and later extended) in which to assume the Lease.
 
 Id.
 
 at 950. Section 4.5(d) of the P & A Agreement obligated Bank One to comply with all relevant terms of “the applicable lease agreement(s) entered into by [MBank].” On September 12, 1989 Bank One informed the FDIC that it would not accept assignment of the Lease. The FDIC then determined that the Lease would be burdensome, and on September 13, 1989 informed Capital that it was disaffirming the Lease.
 

 In early 1990, due to a deteriorating financial condition, Capital contacted Bank One regarding its possible interest in acquiring the FF & E. On December 30,1991 Capital and Bank One entered into an agreement (the “Purchase Agreement”) whereby Bank One purported to purchase the FF
 
 &
 
 E from Capital. The Purchase Agreement provided, in relevant part, that if a tribunal determined that Capital did not have good and marketable title to the FF & E, or that another party involved had legal or equitable title in the FF
 
 &
 
 E, the agreement would terminate.
 

 Within a few weeks of entering into the Purchase Agreement, Bank One initiated this suit in state court against Prudential and TCB. Bank One sought
 
 inter alia
 
 a declaratory judgment that the debts in question had been satisfied; that any liens held by Prudential and TCB had been extinguished by
 
 *537
 
 full payment; and that Prudential and TCB had no legal or equitable right, title, estate, lien, or interest in the FF & E.
 
 Id.
 
 at 950-51. The other parties brought various counterclaims, cross-claims, and third-party actions. In response to several summary judgment motions, the court ruled, in relevant part, that the Ipso Facto Clause was valid and enforceable; that the Lease terminated as of the OCC’s declaration that MBank was insolvent; and that the FDIC lacked the authority and power under the circumstances to disaffirm the Lease.
 
 Id.
 
 at 968 (summarizing rulings). The court also held that the FDIC obtained the FF & E at the time of MBank’s insolvency,
 
 id.
 
 at 965, and that Capital and Prudential were entitled to recover the MCar Assets.
 
 Id.
 
 at 968.
 

 In August 1995, subsequent to the court’s ruling, the FDIC, Capital, Prudential, and TCB entered into a settlement. They agreed that the FDIC would pay the remaining Casualty Value, and that Capital would deliver to the court, for ultimate delivery to the FDIC, a confirmatory bill of sale. On August 15, 1995 the FDIC paid Capital the remaining Casualty Value, interest, and attorney’s fees by way of distributions from the MCar Assets. Capital then tendered payment to Bank One for liquidated damages, as prescribed by the Purchase Agreement, based on its contention that it could not deliver to Bank One good and marketable title to the FF & E, free and clear of all liens. Bank One returned the payment, stating that it did not believe there had been a default under the Purchase Agreement.
 

 Bank One also amended its complaint. It asserts that the FDIC repudiated any rights to the FF & E that survived termination of the Lease. Bank One alleges that this occurred when the FDIC wrote Capital on September 13, 1989 to disaffirm the Lease. As a result, Capital was under no obligation to transfer title to the FF & E, and Bank One properly purchased the FF & E from Capital.
 

 Bank One also asks the court to enter a declaratory judgment against Prudential and TCB, holding that the lien has been extinguished by full payment, that the Indenture terminated by its own terms, and that defendants have no right, title, lien, or interest in the FF & E. Bank One seeks a judgment declaring and ordering defendants to execute and deliver statements, releases of liens, and/or any other documents that Bank One may reasonably request for the purpose of evidencing the termination of liens or interests in the FF & E. Bank One also requests judgment declaring that under the circumstances of this case, the FDIC has no right to claim title to the FF & E, and that Capital has the obligation to convey title to the FF & E to Bank One. Bank One alleges against Prudential claims for tortious interference with prospective contractual relations, and tortious interference with existing contractual relations. Bank One seeks a permanent injunction to prohibit Capital from transferring title to the FF
 
 &
 
 E to the FDIC; punitive damages from Prudential; and attorney’s fees from Prudential, TCB, and the FDIC.
 

 The FDIC has filed a counterclaim
 
 [1]
 
 for compensatory damages and attorney’s fees, contending that Bank One is liable on theories of breach of contract, tenancy at will, conversion, unjust enrichment, and quantum meruit. Bank One seeks to recover unpaid rent for (or, alternatively, the book value of) the FF & E.
 

 The FDIC and Bank One each move for summary judgment. The FDIC seeks summary judgment dismissing Bank One’s declaratory judgment action against the FDIC, as receiver for MBank and in its corporate capacity, and declaring that when the FDIC was appointed as receiver, it obtained complete and unfettered ownership of the FF & E, and that it did not abandon or waive its right to obtain title to the FF & E when it attempted to repudiate the Lease on September 13, 1989. It requests that the court order that the confirmatory bill of sale be disbursed by the court clerk to the FDIC. The FDIC also seeks judgment against Bank One for past due rent in an amount in excess
 
 *538
 
 of $30.6 million (or, alternatively, the book value of the FF & E), and related relief.
 

 Bank One moves for summary judgment, requesting that the court hold that Bank One obtained clear title to and ownership of the FF & E from Capital. Bank One also moves for summary judgment dismissing all of the FDIC’s counterclaim theories.
 

 II
 

 The parties’ respective summary judgment motions present the threshold issue of ownership of the FF & E. The court therefore addresses this question first.
 

 A
 

 The FDIC contends, based on the court’s decision in
 
 Bank One,
 
 that it obtained complete and unfettered ownership and use of the FF & E upon its appointment as MBank’s receiver. The FDIC also argues that Bank One has erroneously asserted that the FDIC repudiated its right to the FF & E when it attempted to disaffirm the Lease on September 13,1989.
 

 Bank One maintains that the FDIC does not own, and has never owned, the FF & E. It argues that upon MBank’s insolvency, the Lease remained valid and enforceable and fixed the parties’ performance. Although the existence of the leasehold ceased, § 18(e) of the Lease continued in effect, obligating the FDIC as receiver to pay Capital the Casualty Value for the FF & E, and requiring Capital to convey title to the FF
 
 &
 
 E, by means of a bill of sale, only upon receipt of payment. Because the FDIC did not pay Capital the Casualty Value until August 1995, after the FDIC had disaffirmed the Lease, title to the FF & E never passed to the FDIC, but remained in Capital as the lessor. By disaffirming the Lease on September 13,1989, the FDIC rendered null, void, and unenforceable the provision requiring the FDIC to pay the Casualty Value, and obligating Capital to tender to the FDIC title to the FF
 
 &
 
 E. The FDIC’s disaffirmance of the Lease terminated the entire agreement. By repudiating the Lease prior to paying the Casualty Value, the FDIC excused Capital from its obligation to deliver title, which, in turn, enabled Capital to convey clear title to and ownership of the FF & E to Bank One.
 

 Bank One argues that the court’s provability analysis in
 
 Bank One
 
 is not called into question by this interpretation of § 18(e), because the court did not address whether the executory portions of the Lease would be subject to repudiation. Bank One posits that the reciprocal terms involving MBank’s promised payment of the Casualty Value, and Capital’s obligation to transfer title to the FF & E, remained unperformed. The FDIC’s disaffirmance was effective as to these executory contractual obligations.
 
 Bank One
 
 is not to the contrary, because the fact that unperformed reciprocal promises remain to be performed does not affect the provability of a claim. According to Bank One, because these executory promises do not rely on a new contractual obligation, but are grounded in the rights of the parties vested at the time of insolvency, the provability of the claim is unchanged.
 
 [2]
 

 Bank One also contends the FDIC has made conclusive judicial admissions that it does not own the FF & E.
 

 B
 

 1
 

 In
 
 Bank One
 
 the court addressed the FDIC’s assertion that public policy considerations warranted upholding the FDIC’s right to disaffirm the Lease. In order to reject the FDIC’s public policy analysis, the court was required to analyze the specific facts of this case.
 
 Bank One,
 
 878 F.Supp. at 965. This included “analyz[ing] the effect of the
 
 *539
 
 FF & E Lease transaction on the MBank receivership estate and the FDIC’s capacity to perform its intended functions.”
 
 Id.
 
 In concluding that the transaction did not violate public policy, the court held that
 

 The transaction was structured so that MBank and, in turn, the FDIC-Reeeiver and any successor bank obtained
 
 complete and unfettered
 
 ownership and use of the FF
 
 &
 
 E. In other words, but for the loss of the MCar Assets — a circumstance to which the court will turn below — the FF & E Lease was drafted so that when the FDIC took over as receiver, it obtained all the FF & E located on the failed bank’s premises as if there had been no sale-leaseback transaction, and was able to convey it to the bridge bank.
 

 Id.
 
 (emphasis in original). The court also pointed out that the transaction appeared to guarantee that DIBB/Bank One “would have furniture, fixtures, and equipment — not to mention a door to the bank vault — thus significantly facilitating the FDIC’s efforts swiftly to effect a P & A transaction.”
 
 Id.
 
 at 966.
 

 Bank One contends the court’s statement that the FDIC obtained “complete and unfettered ownership and use of the FF
 
 &
 
 E” is
 
 dicta,
 
 and should not be understood as holding that the FDIC owns the FF & E. Bank One argues that the court’s public policy analysis is not dependent on
 
 actual
 
 ownership of the FF
 
 &
 
 E. Instead, the FDIC’s mere
 
 right
 
 to pay the Casualty Value to obtain the FF & E is sufficient to support the court’s reasoning. Bank One posits that if the statement is not
 
 dicta,
 
 then it is in error, because once the court declared § 18(e) enforceable, Capital retained title to the FF & E until it received full payment of the Casualty Value.
 

 This holding from
 
 Bank One
 
 is not
 
 dicta.
 
 In the public policy context alone, the court could have rejected the FDIC’s arguments on the more limited basis that Bank One now suggests. But the court’s conclusion reflects the effect of other rulings — concerning the provability of Capital’s claim, and the inability of the FDIC to disaffirm the Lease — that are essential to the court’s decision. Additionally, as the court explains below, after consideration of the parties’ present briefing, the court is not persuaded that its holding is in error. The court therefore concludes that MBank, and, in turn, the FDIC, obtained complete and unfettered ownership of the FF & E upon MBank’s insolvency.
 

 2
 

 The court rejects the FF & E ownership arguments that Bank One advances. Each one rests on the premise that the FDIC could disaffirm the Lease between the time of its appointment as receiver, and its payment to Capital of the Casualty Value. This proposition cannot be harmonized with the court’s conclusions in
 
 Bank One
 
 that Capital had a provable claim to the Casualty Value,
 
 Bank One,
 
 878 F.Supp. at 960, and that the FDIC “lack[ed] the authority and power under the circumstances presented by this case to disaffirm the lease[.]”
 
 Id.
 
 at 968.
 

 Bank One’s reasons for contending that the FDIC does not own the FF & E all have their basis in the following portion of § 18(e) of the Lease:
 

 Notwithstanding anything else in this Lease to the contrary, upon and simultaneously with the occurrence of an Event of Default described in Section 17(h), the following remedy shall be the exclusive remedy available to the Lessor ...: This Lease shall absolutely cease and terminate and be of no further force or effect but the Lessee shall remain liable as hereinafter provided; and thereupon
 
 the Lessee shall, without further demand, notice or other action whatsoever on the part of Lessor, forthuAth pay to the Lessor an amount equal to any unpaid Rent due and payable for all periods up to and including the Basic Rent Date following the date on which this Lease is in default, plus, as liquidated damages for the loss of a bargain and not as a penalty, an amount equal to the aggregate Casualty Value of the Leased Equipment, computed as of the date of the Event of Default under Section 17(h). Immediately upon receipt of such payment, the Lessor shall execute and deliver to the Lessee, or to the Lessee’s Assignee, nominee, or legal representative, a bill of sale
 
 (without representations or warranties except that the Leased Equip-
 
 *540
 
 merit is free and clear of all Liens arising by, through or in the right of Lessor or by or in favor of any Person claiming by, through or under the Lessor and that the Lessee shall receive all right, title and interest in the Leased Equipment as originally transferred by Lessee to Lessor pursuant to this Lease) for the Leased Equipment, and such other documents as may be required to release the security interest in the Leased Equipment or any other interest held by any Assignee or nominee in such form as may be reasonably requested by Lessee, all at the Lessee’s expense.
 

 Lease § 18(e) (emphasis added).
 
 [3]
 
 Bank One urges that in accordance with the terms of § 18(e), the FDIC was obligated to pay Capital the Casualty Value before Capital was required to deliver to the FDIC a bill of sale. When the FDIC disaffirmed the Lease prior to paying this sum, it excused Capital from the obligation to convey title to the FF & E.
 

 Bank One frames its arguments in terms of how § 18(e) operated to excuse Capital from the obligation to deliver title unless the FDIC paid the Casualty Value.
 
 See, e.g.,
 
 Bank One MSJ at 9. This reasoning fails adequately to address the counterpart to this proposition: if Capital could be relieved of this duty by the FDIC’s repudiation of the Lease, then the FDIC could likewise “relieve[ ] itself of the duty to pay the Casualty Value.” Bank One Resp. at 4. If § 18(e) is given this effect, then Capital in fact had something less than a provable claim, because the FDIC retained the post-insolvency right to abrogate it.
 
 Cf id.
 
 at 3 (arguing that “On September 13, 1989, the FDIC exercised its rights as Receiver to disaffirm the Lease without ever having paid the casualty value for the FF & E.”).
 

 This is contrary to
 
 Bank One’s
 
 analysis concerning provable claims and the FDIC’s powers of disaffirmance. At MBank’s insolvency,
 

 without option, notice, or any other action, the status of the parties was permanently fixed. At insolvency, MBank became immediately liable for any rent unpaid up to the day of insolvency, and also became obligated for the Casualty Value of the FF & E, as calculated according to the Lease and attached annexes. Section 18(e) of the Lease conferred a claim for an amount specified, which became unconditionally fixed, due, and owing, and fully accrued, simultaneously with MBank’s insolvency.
 

 Bank One,
 
 878 F.Supp. at 958.
 

 The claims did not originate from any conduct occurring after MBank’s insolvency and, unlike contingent improvable lease cases and even contingent provable standby letter of credit cases, accrued upon insolvency without further action, notice, reentry, or subsequent termination.
 

 Id.
 
 at 960. Moreover, because an ipso facto clause “has the effect of terminating a lease before the FDIC has the right to disaffirm it,”
 
 id.
 
 at 965, the FDIC had no right “to keep [the] agreement alive, notwithstanding that it ended by its own terms at insolvency, merely for the purpose of repudiating the agreement.”
 
 Id.
 

 Section 18(e) provided that upon the occurrence of an event of default, Capital was entitled to payment forthwith of rent and the Casualty Value, without demand, notice, or other action. Capital was obligated to execute and deliver a bill of sale immediately upon receipt of payment. This proviso in part triggered an automatic change of ownership that enabled Capital to satisfy the provable claim standards, and in part conferred a remedy to ensure payment of the claim. But § 18(e) did not authorize the FDIC to excuse itself from paying the claim by repudiating the Lease. Indeed, it would be incongruous to hold in
 
 Bank One
 
 that Capital had a provable claim that the FDIC could not defeat, only now to conclude that the FDIC could nullify the claim by disaffirming the Lease prior to complying with a compulsory remedy.
 

 As the FDIC points out, “[t]he implications of Bank One’s position are enormous.” FDIC Rep.Br. at 3. To permit the FDIC to repudiate a provable claim could result in “uncertainty for existing and potential bank creditors and the financial markets.”
 
 Id.
 
 Under this reasoning, the FDIC would be empowered to disaffirm a provable claim
 
 *541
 
 anytime a creditor had a contractual right, like the one in § 18(e), to enforce its claim.
 

 The court cannot adopt Bank One’s interpretation of § 18(e), and its analysis of the law, without holding that Capital has something less valuable than a provable claim, and without contradicting its conclusion in
 
 Bank One
 
 that the FDIC “lack[ed] the authority and power under the circumstances presented by this case to disaffirm the lease.” The court therefore holds that the FDIC obtained ownership of the FF & E when it became MBank’s receiver. Its purported disaffirmance and repudiation of the Lease on September 13, 1989 is a nullity as a matter of law.
 
 [4]
 

 C
 

 The court next considers Bank One’s contention that the FDIC is conclusively bound by admissions made in its pleadings, in which it conceded that it did not own the FF & E.
 

 Although “factual assertions in pleadings are ... judicial admissions
 
 conclusively
 
 binding on the party that made them,”
 
 Campbell v. Sonat Offshore Drilling, Inc.,
 
 979 F.2d 1115, 1119 (5th Cir.1992) (quoting
 
 Davis v. A.G. Edwards & Sons, Inc.,
 
 823 F.2d 105, 108 (5th Cir.1987)), “[ajdmissions made in superseded pleadings are as a general rule considered to lose their binding force and to have value only as evidentiary admissions.”
 
 White v. ARCO/Polymers, Inc.,
 
 720 F.2d 1391, 1396 n. 5 (5th Cir.1983). The FDIC’s current pleadings supersede its earlier admissions, and clearly assert ownership in the FF
 
 &
 
 E. Consequently, the FDIC is not conclusively bound by its earlier refutations of ownership.
 

 The question thus becomes whether there are genuine issues of material fact raised by the FDIC’s non-binding admissions. The court holds there are not. It is patent that all these statements were made in the context of the FDIC’s primary position in this litigation (albeit an erroneous one) that it possessed the authority to disaffirm the Lease. All the FDIC’s arguments are consistent when viewed through this prism. An issue of fact is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in that party’s favor that the evidence allows, would be sufficient to support a verdict in the party’s favor.
 
 Hilton v. Southwestern Bell Tel. Co.,
 
 936 F.2d 823, 827 (5th Cir.1991) (per curiam),
 
 cert. denied,
 
 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992). An issue of fact is not genuine if no reasonable trier of fact could find in favor of the nonmovant.
 
 Lavespere v. Niagara Mach. & Tool Works, Inc.,
 
 910 F.2d 167, 178 (5th Cir.1990),
 
 cert. denied,
 
 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993). A reasonable trier of fact could not find that the FDIC admitted under all circumstances, and specifically in the context of Bank One’s present claim to ownership, that it does not own the FF & E.
 
 [5]
 

 D
 

 The court concludes that the FDIC is entitled to summary judgment dismissing count two of Bank One’s amended complaint, and declaring that when the FDIC was appointed as MBank’s receiver, it obtained complete and unfettered ownership of the FF & E, and it did not abandon or waive its right to obtain title to the FF & E when it purported to disaffirm the Lease on September 13, 1989. It is also entitled to have the confirmatory bill of sale disbursed to it by the court clerk. Bank One’s motion for summary judgment is denied to the extent it seeks a declaration that it obtained clear title to and ownership of the FF & E from Capital.
 

 Ill
 

 The next issue presented is whether the FDIC is entitled to recover on its counterclaims for unpaid rent.
 

 
 *542
 
 A
 

 The FDIC alleges in count one of its counterclaim that it has the right to recover unpaid rent, calculated in accordance with the FF & E Lease. In its summary judgment motion, the FDIC argues that it is entitled to recover rent at the Lease rates, either pursuant to § 4.5(d) of the P & A Agreement, or on the basis that Bank One is a holdover tenant. Bank One argues that it is not obligated to pay rent pursuant to § 4.5(d) because the Lease terminated at the time of insolvency, and there was accordingly no operational lease agreement within the meaning of § 4.5(d). It contends it cannot be a holdover tenant because it was never a party under the original Capital-MBank Lease. The FDIC counters that the obligation to pay rent arises from the P & A Agreement, not the Lease, and that the reference to the Lease in § 4.5(d) serves merely as a standard to determine the amount that Bank One must pay for the use and benefit of the FF & E. It asserts on various grounds that Bank One is a holdover tenant.
 

 The court agrees with Bank One’s positions in both respects. Section 4.5(d) of the Lease provides:
 

 The Assuming Bank shall, during the period which it has the use and/or benefit of Fixtures, Leasehold Improvements and Furniture and Equipment leased by the Failed Bank, pay all operating costs with respect thereto and comply with all relevant terms of the applicable lease agreements) entered into by the Failed Bank, including without limitation, the payment of all rent, taxes, fees, charges, utilities, insurance and assessments to the Receiver or lessor(s), as the case may be.
 

 The interpretation of the P & A Agreement is governed by Texas law.
 
 See Vernon v. RTC,
 
 907 F.2d 1101, 1109 (11th Cir.1990) (holding state law applies because there are no federal laws governing contract construction). Under Texas law, an unambiguous contract — one that can be given a certain or definite meaning or interpretation — is construed by the court as a matter of law.
 
 Coker v. Coker,
 
 650 S.W.2d 391, 393 (Tex. 1983). The court concludes that § 4.5(d) is unambiguous. It does not require that Bank One comply with the terms of leases that were terminated prior to entry into the P & A Agreement. Because the Lease terminated upon MBank’s insolvency, there was no “applicable lease agreement” with which Bank One could comply. Section 4.5(d) does not therefore provide a basis for the FDIC to recover the rent for which it sues.
 

 The FDIC’s holdover tenant theory also fails. A holdover tenant is one who continues to occupy leased premises after the term has expired.
 
 See Wichita Falls Office Assocs. v. Banc One Corp.,
 
 Civil Action No. 3:90-CV-1301-H, slip op. at 24 (N.D.Tex. Nov. 22, 1993) (Sanders, C.J.) (holding that entity that was never a party to or bound by a lease could not be a holdover tenant);
 
 Turton v. Pyland,
 
 567 S.W.2d 247, 248 (Tex.Civ. App.1978, no writ) (holding that tenants who held over were liable for rent under original lease, and stating that “As a general rule, when a tenant holds over after the expiration of the term of a lease, the holding over constitutes a renewal of the lease for a term identical to the lease which has expired.”). Bank One never entered into a lease for the FF & E. As noted, the Lease terminated at MBank’s insolvency, prior to DIBB/Bank One’s entry into the P & A Agreement. The holdover doctrine has no application.
 

 Accordingly, the court denies the FDIC’s motion for summary judgment to recover rent at the rates specified in the Lease, and grants summary judgment in favor of Bank One dismissing count one of the FDIC’s counterclaim.
 

 B
 

 The FDIC alleges in count two of its counterclaim that it is entitled to recover the reasonable rental value of the FF & E as a tenant at will. “A tenant at will is one who holds possession of a premises by permission of an owner, but without a fixed term.”
 
 Chale Garza Invs., Inc. v. Madaria,
 
 — S.W.2d -, -(Tex.App.1996) [1996 WL 207607, at *3 (Tex.App. Apr. 30, 1996) ] (citing
 
 Fandey v. Lee,
 
 880 S.W.2d 164, 169 (Tex.App. 1994, writ denied)).
 

 Bank One moves for summary judgment dismissing count two. It asserts that it can
 
 *543
 
 not be held liable as a tenant at will because the FDIC does not and has never owned the FF & E. It also maintains that if the FDIC’s repudiation of the Lease is ineffective, it owes rent beginning only on August 15, 1995, because this is the date the FDIC became the owner of the FF & E.
 
 [6]
 

 The court holds that Bank One is a tenant at will. For reasons already set out in
 
 Bank One
 
 and earlier in this opinion, the court holds that the FDIC became the owner of the FF & E at the time of its appointment as MBank’s receiver. On the same basis, the court rejects the contention that the FDIC did not become the owner until it paid the Casualty Value in August 1995. The FDIC is therefore entitled to recover from Bank One the reasonable rental value of the FF
 
 &
 
 E.
 
 See Wichita Falls Office Assocs.,
 
 Civil Action No. 3:90-CV-1301-H, slip op. at 23 (holding that proper measure of damages for tenant at will is reasonable rental value). The FDIC has not established without genuine and material dispute, however, the amount of the reasonable rental value.
 
 Cf.
 
 FDIC Rep.Br. at 6 n. 3. This sum must be ascertained by trial.
 

 IV
 

 The FDIC has alleged alternative theories of recovery for Bank One’s use of the FF & E. Although these counts are the subject of the parties’ motions, the FDIC concedes that the court need not reach these claims in the event it holds that the FDIC has a right to recover either on count one or count two. Accordingly, the court assumes that these claims are moot, and dismisses them without prejudice.
 

 4: s£ ‡ H* *
 

 The parties’ motions for summary judgment are granted in part and denied in part. The FDIC is entitled to recover against Bank One as a tenant at will, for the period beginning March 29, 1989, the reasonable rental value of the FF & E, the specific amount of which is to be resolved by the trier of fact.
 

 SO ORDERED.
 

 [1]
 

 . The FDIC brings the counterclaim both in its corporate and receivership capacities.
 
 See
 
 Counterclaim at ¶ 3. For clarity, the court refers to the FDIC in both capacities as "the FDIC" unless the context otherwise requires.
 

 [2]
 

 . Bank One also argues that the August 1995 settlement agreement between the FDIC and Capital is nothing more than an attempt to backdate ownership, and that the settlement documents contain admissions, and reflect actions by the FDIC and other parties, that demonstrate Bank One's ownership of the FF & E. The court declines to enter summary judgment on this basis. Although the settlement is not of itself sufficient to grant summary judgment in favor of the FDIC, the court also discerns nothing in the settlement documents that constitute admissions that preclude or call into question the positions the FDIC is taking in its counterclaim and summary judgment motion.
 

 [3]
 

 . Section 18(e) is quoted in full in
 
 Bank One,
 
 878 F.Supp. at 948 n. 7.
 

 [4]
 

 . Bank One also contends that, by repudiating the Lease, the FDIC waived its right to pay the Casually Value. This argument assumes the FDIC had the authority to repudiate the Lease. Because it did not, this argument lacks merit.
 

 [5]
 

 . Bank One and the FDIC dispute whether the doctrine of judicial estoppel is applicable, the FDIC's statements are factual assertions or legal conclusions, and the Joint Litigation Agreement precluded the FDIC from asserting its present claim of ownership. These contentions need not be addressed.
 

 [6]
 

 . Bank One also argues that the FDIC, as Capital’s assignee, is estopped from claiming back rent. The FDIC’s right to recover rent, however, is independent of any right derived from Capital. This argument is therefore without merit.