In re Brian K. KASBEE and Melanie K. Kasbee, Debtors.

Brian K. Kasbee and Melanie K. Kasbee, Plaintiffs

v.

Huntington National Bank, Defendant.

Bankruptcy No. 09–11575–TPA.

Adversary No. 09–1137–TPA.

United States Bankruptcy Court, W.D. Pennsylvania.

July 30, 2010.

Gary J. Gaertner, Esq., Pittsburgh, PA, for Huntington National Bank.

Stephen H. Hutzelman, Esq., Erie, PA, for Debtor.

## MEMORANDUM OPINION

THOMAS P. AGRESTI, Chief Judge.

Currently before the Court is a ***Motion for Summary Judgment*** ("Summary Judgment Motion") filed at Adv. No. 09–1137, Document No. 10, by the Debtors, Brian K. Kasbee and Melanie K. Kasbee, ("Debtors") in reference to their pending *Complaint for Determination of Secured Status ("Complaint")*.[1] Defendant, Huntington National Bank ("Huntington") opposes entry of the summary judgment. For the reasons that follow, the Court will deny the *Summary Judgment Motion.*

## PROCEDURAL AND FACTUAL BACKGROUND

The material facts underlying the *Summary Judgment Motion* currently before the Court are not in dispute. The Debtors operate a family farm, which includes their residence, on land located at 136 Oniontown Road, Greenville, Pennsylvania ("Property"). On March 20, 2006, the Debtors entered into a loan agreement with Sky Bank, now by merger Huntington, in the face amount of $267,000. This obligation was secured by a mortgage on the Property dated March 20, 2006, also in the amount of $267,000 and recorded March 27, 2006. The Debtors filed a voluntary Petition under Chapter 12 of the *Bankruptcy Code* on August 31, 2009. In *Schedule A* of the *Petition* the Debtors valued the Property at $285,000. On November 8, 2009, Huntington filed a proof of claim concerning the above debt in the amount of $249,903.41, designating it as a secured claim.

Also on November 8, 2009, in the main bankruptcy case, Huntington filed a *Motion for Relief from Automatic Stay* ("Relief Motion") at Document No. 17. In the *Relief Motion,* Huntington averred that its payoff was $252,272.45 and that "[t]he fair market value of the premises was $169,000 based on an appraisal/BPO dated November 4, 2009." *Id.* at ¶ 12. Debtors filed a Response to the *Relief Motion* in which they agreed with the value that Huntington alleged, stating:

"Admitted. The Debtors accept the fair market value of the premises as $169,000.00 per the appraisal attached to the *Relief Motion.* Accordingly, they are in the process of filing a Complaint under Section 506 of the Bankruptcy Code for determination of the secured lien of the Movant Huntington."

---

1. The Court's Jurisdiction to hear and determine the *Motion for Summary Judgment on the Complaint for Determination of Secured Status* arises under *28 U.S.C. §§ 1334* and *157*. This is a core matter pursuant to *28 U.S.C. § 157(b)(2)(A), (K) and (O).* This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to *Fed.R.Bankr.P. 7052* and *9014.*

*Id.* at Document No. 23. Debtors then filed a Chapter 12 Plan in which they provided:

"Huntington Bank holds a mortgage on Debtor's real estate which it has valued at $169,000.00 in a secured proof of claim (No. 6) of $249,903.41. Debtor's will accept Huntington's value and file a Complaint under § 506 to establish the secured portion of this claim, and the balance shall be unsecured."

*Id.* at Document No. 26. Thereafter, on December 3, 2009, the Debtors filed the within Adversary Proceeding. The initial hearing on the *Relief Motion* was held on December 15, 2009. The following colloquy took place at the hearing:

**Court:** What is the equity situation?

**Atty. Gaertner:** We have the mortgage on the 48 acres and on the equity issue, first of all, a claim has been filed in this case listing total indebtedness of $249,900. With respect to the issue of equity, a broker's price opinion was requested and attached to our motion and it shows a value of $169,000. My client has looked at it and has said, why in the world are we even using this because this farm has 48 acres and it is using comparables with one-third of an acre, I believe one has 4 acres. So my client has gone ahead and ordered a full interior appraisal and I will be contacting Mr. Hutzelman to basically request their cooperation so that we can get the appraisal done and get a good reliable figure on what the property is worth.

*See Audio Transcript of Proceedings* dated December 15, 2009, 1:38:25 to 1:39:36. After a discussion about the payments proposed under the Plan, the colloquy continued:

**Court:** Any objection to continuing this to the conciliation?

**Atty. Gaertner:** No, your honor. .... We will not object to continuing it to the conciliation conference.

*Id.* at 1:43:36 to 1:44:13.

The *Complaint* seeks a determination that the value of the Property is $169,000, the same value alleged by Huntington in its *Relief Motion.* On February 12, 2010, Debtors filed an *Amended Schedule A* in which the Debtors changed the value of the Property from the $285,000 value that they originally stated to a value of $169,000, indicating that they now agree with the value as alleged by Huntington in the *Relief Motion.* Huntington filed a withdrawal of its *Relief Motion* on May 31, 2010, which was granted by Order dated June 1, 2010. Document Nos. 72, 73. Huntington has now filed a full appraisal which asserts a value for the Property in the amount of $267,500. *See Adversary Proceeding,* Document No. 30.

### *SUMMARY JUDGMENT STANDARD*

Summary judgment, made applicable to adversary proceedings pursuant to *Fed. R.Bankr.P. 7056* which incorporates *Fed.R. Civ.P. 56,* is appropriate if the pleadings, depositions, supporting affidavits, answers to interrogatories and admissions that are part of the record demonstrate that there exists no genuine issue of material fact and that only a legal issue exists thereby entitling the moving party to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Earth-Data Int'l of N.C., L.L.C. v. STV, Inc.,* 159 F.Supp.2d 844 (E.D.Pa.2001); *In re Air Nail Co.,* 329 B.R. 512 (Bankr.W.D.Pa. 2005). *Med. Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir.1999) (quoting *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994)); *Fed.R.Bankr.P. 56(c).* Here, the Parties agree, and the record is clear, that no material facts are at issue.

## DISCUSSION

### (a) Judicial Admission

In their *Summary Judgment Motion,* the Debtors ask that judgment be entered in their favor on the issue of whether Huntington is bound by the $169,000 value it originally alleged in the *Relief Motion* claiming that the allegation is a binding judicial admission. If the Court were to agree, the Debtors believe entry of summary judgment would effectively resolve the *Complaint* in their favor. Alternatively, the Debtors claim that Huntington is judicially estopped from asserting any other value. The Court disagrees with the Debtors' position in both instances.

■ "Judicial admissions are concessions in pleadings or briefs that bind the party who makes them." *Berckeley Inv. Group, Ltd. v. Colkitt,* 455 F.3d 195, 211 n. 20 (3d Cir.2006) citing *Parilla v. IAP Worldwide Serv., VI, Inc.,* 368 F.3d 269, 275 (3d Cir.2004) (finding that the plaintiff was bound because she "expressly conceded those facts in her complaint."), citing, *inter alia, Soo Line R. Co. v. St. Louis Southwestern Ry.,* 125 F.3d 481, 483 (7th Cir.1997) (noting the "well-settled rule that a party is bound by what it states in its pleadings"); *Glick v. White Motor Co.,* 458 F.2d 1287, 1291 (3d Cir.1972) (noting that unequivocal "judicial admissions are binding for the purpose of the case in which the admissions are made[,] including appeals").

■ However, when a party making a judicial admission subsequently provides a timely explanation as to the error, the trial court must accord the explanation due weight. *Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848, 859–60 (9th Cir.1995); *Schwartz v. Adams County,* 2010 WL 2011582 at *4 (D.Idaho, May 20, 2010); *In re LRP Mushrooms, Inc.,* 2010 WL 2772510 at *10 (Bankr.E.D.Pa., July 13, 2010); *Adani Ex-*

*ports, Ltd. v. Amci (Export) Corp.,* 2009 WL 2485370 at *9 (W.D.Pa. August 7, 2009). Although factual assertions in a pleading can ultimately be considered judicial admissions, "admissions" made in superceded pleadings lose their binding force and have value only as evidentiary admissions. *See Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.,* 939 F.Supp. 533, 541 (N.D.Tex.1996). An unequivocal judicial admission is binding on the party who made it which is to be distinguished from an evidentiary admission which is admissible but not conclusive. *In re Jordan,* 403 B.R. 339, 351 (Bankr.W.D.Pa.2009). A party may introduce superceded admissions into evidence to be considered as adverse evidentiary admissions by the factfinder. *In re Gruppo Antico, Inc.,* 359 B.R. 578, 587–88 (Bankr.D.Del.2007) quoting *In re C.F. Foods, L.P.,* 265 B.R. 71, 87 (Bankr.E.D.Pa.2001). Even the Debtors agree with the foregoing standard in their brief which summarizes how to apply the doctrine of judicial admissions, i.e., "statements contained in a party's pleadings are binding on that party and are considered judicial admissions unless the statements are withdrawn or amended." *See Brief in Support of Motion for Summary Judgment,* p. 3, Adversary Proceeding, Document No. 21.

■ As demonstrated by the prior reference to the record, Huntington timely repudiated its allegation of value at the initial hearing on the *Relief Motion.* It explained that the value of $169,000 was the result of a broker's price opinion ("BPO") and not a formal appraisal and that it had, by the time of the first hearing, realized that the comparables utilized in the BPO were inadequate and that as a result it was obtaining a full appraisal to determine the true value. Furthermore, it subsequently, although belatedly, with-

drew the *Relief Motion* in which the allegation of value was set forth.

The Court finds that Huntington's timely explanation of the error at the first hearing and its subsequent withdrawal of the *Relief Motion* supercedes and warrants relief from the allegation of value relied upon by the Debtors in the *Summary Judgment Motion.* The Court did not make any determination based on the asserted value by Huntington. The Debtors were promptly made aware of Huntington's position and have had or will have adequate opportunity to obtain their own appraisal to learn the true value of the Property for use at trial. Thus, the Court concludes that the allegation of value is not a binding judicial admission. It is an evidentiary admission which may be presented as evidence by the Debtors at trial and which may be controverted or explained by Huntington.

### (b) Judicial Estoppel

■ Closely related to the doctrine of judicial admissions is the doctrine of judicial estoppel. Judicial estoppel "is a tool designed to protect the Court from parties who seek to gain advantage by 'litigating on one theory and then subsequently seeking additional advantage by pursuing an irreconcilably inconsistent theory'." *Bosco v. C.F.G. Health Systems, LLC,* 2007 WL 1791254 at *3 (D.N.J., June 19, 2007) quoting *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 358 (3d Cir.1996). It is an extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice. *Oneida Motor Fght., Inc. v. United Jersey Bank,* 848 F.2d 414, 424 (3d Cir.1988).

■ To find that the doctrine of judicial estoppel applies, cases emanating from the Court of Appeals for the Third Circuit require that: (1) the party to be estopped took two irreconcilably inconsistent positions; (2) the change of position was done in bad faith, in order to play "fast and loose" with the court; and (3) the sanction of estoppel is "tailored to address the harm" and cannot be remedied by a lesser sanction. *Montrose Med. Group Participating Savings Plan v. Bulger,* 243 F.3d 773, 779–80 (3d Cir.2001) quoting *Klein v. Stahl GMBH & Co. Maschinefabrik,* 185 F.3d 98, 108 (3d Cir.1999). The doctrine of judicial estoppel is to be applied sparingly and reserved for the most egregious case. *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. GMC,* 337 F.3d 314, 324 (3d Cir.2003). These factors need not necessarily be considered, in determining the existence of judicial estoppel where the party alleging the inconsistent positions did not ultimately convince the trial court to accept its earlier position. *G–I Holdings, Inc. v. Reliance Ins. Co.,* 586 F.3d 247, 262 (3d Cir.2009) (citations omitted).

■ The Debtors direct our attention to *United Bank/Seaboard Nat'l v. B. F. Saul Real Estate Inv. Trust,* 641 F.2d 185 (4th Cir.1981) in support of the application of judicial estoppel here. In that case, Triangle Inn Associates ("Triangle") owned and operated a Holiday Inn motel. It owed balances on a first mortgage to B.F. Saul Real Estate Investment Trust ("Saul") and on second and third mortgages to two banks, United Virginia Bank and Virginia National Bank (collectively, the "Banks.") Triangle filed a bankruptcy reorganization proceeding and Saul sought relief from stay. The Banks successfully opposed the relief, asserting that Saul was adequately protected because the value of the Holiday Inn property, including $650,000 in personal property, was far in excess of the amount of Triangle's debt to Saul. The Banks also successfully obtained a "cramdown" of Triangle's plan of reorganization because, as the court found, Saul was fully secured by virtue of the Inn's

value which included the personal property, which aggregate value, "handsomely" exceeded Saul's debt. Only when Triangle defaulted on its plan and the bankruptcy court allowed Saul to revive its foreclosure proceeding, that had been suspended for two and one-half years by the bankruptcy proceeding, did the Banks assert the contrary position that Saul's security interest did not include the personal property.

Unlike the situation before this Court, a finding of judicial estoppel was appropriate in the *B. F. Saul Real Estate* case since the Banks successfully argued one position to conclusion to obtain a desired result in their favor and, only when the situation changed and the Debtor failed, did they begin to argue a contrary position that could lead to an opposite result that would favor the Banks under the changed circumstances. Here, Huntington never obtained a favorable result. It alerted the Court of the problems with the BPO at the first hearing and is not now seeking to change its position only after successfully advancing a different position. Therefore, the *B. F. Saul Real Estate* case does not support the Debtors' position under these facts.

The Debtor also directs the Court's attention to *In re Stroh*, 34 Fed.Appx. 562 (9th Cir.2002), believing it too supports the Debtor's position since it held that an individual who stated he had no partnerships interests in his prior bankruptcy, could not thereafter claim, in fact, that he possessed a partnership interest in a subsequent, non-bankruptcy matter. *Stroh* does not help the Debtor's cause, either.

In *Stroh*, the Debtor filed a bankruptcy on June 15, 1995. In his bankruptcy schedules he stated that he owned no partnership interests. The case was closed as a no asset case on October 4, 1995. In 1998, Stroh sued an individual by the name of Grant in state court claiming that Grant owed him money from an alleged partnership between them. Stroh claimed in the subsequent action that the partnership began before the filing of his bankruptcy petition on June 15, 1995. The court found that all three elements of judicial estoppel were met. First, Stroh's later claim of a partnership was inconsistent with his bankruptcy schedule. Second, the bankruptcy court accepted Stroh's earlier position when it closed Stroh's bankruptcy case as a no-asset case. Third, "regardless of whether Stroh would now receive a benefit from his lawsuit against Grant, Stroh derived an unfair advantage when he deceived the bankruptcy court into closing his case." *Id.* at 565. As a result, the court in *Stroh* concluded that the application of judicial estoppel "was necessary to preserve the integrity of the bankruptcy process." *Id.* Here, Huntington has not deceived the Court into taking action. Nor did it obtain a result based on false statements that resulted in an unfair advantage.

The Debtors next reference *In re Artha Mgmt., Inc.*, 174 B.R. 671 (Bankr.S.D.N.Y. 1994) in support of summary judgment. This case involved a preference action where the Chapter 11 trustee sought to recover monies paid to a bank within a year of the February 15, 1990 bankruptcy filing. Previously, in December, 1990, the Bank sought relief from stay. In 1991, relief was granted by stipulation entered between the Chapter 11 trustee and the bank. In the stipulation it was agreed that liens against the debtor's property exceeded the property's value and that the debtor possessed no equity. The trustee sought to preclude the bank, on the basis of judicial estoppel, from introducing an appraisal to contest the company's solvency. The court concluded that the bank's statements in the stipulation regarding the property's value—made in the context of a

stay relief motion—did not preclude the bank from making a statement regarding the property's value at the time of the alleged preferential transfers, two years earlier. Here, we have a similar situation. Even if there had been a stipulation or finding of value in regard to the *Relief Motion*, that value was asserted in the context of that motion. Such an event is not necessarily binding in a subsequent *Section 506* action.

 Finally, application of the doctrine of judicial estoppel as applied to estimates of value in a bankruptcy is considered with a different, more relaxed, view. "It is well settled that 'estimates of value made during bankruptcy proceedings are binding only for the purpose of a specific hearing ... [do] not have a res judicata effect' in subsequent hearings." *Suntrust Bank v. Blue Water Fiber, L.P.*, 93 F.Supp.2d 787, 796 (E.D.Mich.2000) quoting *In re Snowshoe Co.*, 789 F.2d 1085, 1088–89 (4th Cir.1986). "Under Code § 506(a), valuation for one purpose in a case is not even binding for other papers in the same case." *In re Kouterick*, 161 B.R. 755, 760 (Bankr.D.N.J.1993).

In *In re Thomas* 344 B.R. 386 (Bankr. W.D.Pa.2006), the Honorable Judith K. Fitzgerald of this District was faced with a factual situation very similar to the present case and she rendered an apt opinion which the Court finds to be instructive here. In *Thomas*, the mortgagee sought relief from stay, attaching to its motion a BPO that listed the fair market value of the property at $140,000. The motion was granted by default. The debtors subsequently filed a motion to reconsider and also converted the bankruptcy case from Chapter 7 to Chapter 13. Thereafter, the court vacated the default order and the debtors then filed a complaint for determination of secured status. In their complaint the debtors asserted that under the doctrine of judicial estoppel the mortgagee was precluded from asserting a property value different from the value asserted in the prior motion for relief from stay.

The court in *Thomas* found that the doctrine of judicial estoppel did not apply for two reasons. First, the order granting relief was vacated and was of no effect. Therefore, there was no finding of value. Second, the determination of value for purposes of a motion for relief from stay and for a valuation under *Section 506(a)* are made under differing standards. When considering a motion for relief from stay, a court need only determine that there is no equity; it need not determine an exact value. Under *Section 506(a)*, the parties are bound to a specific value. "Full appraisals, not just the 'drive by' Broker's Price Opinion are used for purposes of § 506(a) when the matter is contested." *Id.* at 393.[2] In this case, there was never an order, not even a default order on the *Relief Motion*. There was no finding of value. Judicial estoppel does not apply.

### CONCLUSION

The original, $169,000 value for the Property as asserted by Huntington was

---

**2.** At argument Huntington explained that it often submitted BPOs at the pleading stage of a relief from stay motion merely as a cost saving tactic both to Huntington and, ultimately, the debtor. A full blown appraisal can be very costly depending on the subject matter. Huntington takes the position that it is prudent not to incur these costs early on in the pleading stage, which costs will be borne by the debtor if the claim is ultimately cured, and pose an additional cost to Huntington, if not, if no issue as to value arises in the litigation. Depending on the course of the relief from stay litigation, unnecessary costs therefore can be avoided. This approach in financing relief from stay litigation is practical, reasonable and appropriate. It is supported by the Court's decision in *Thomas*. This Court concurs and agrees with the reasoning behind taking such an approach.

promptly withdrawn and an adequate explanation of that withdrawal provided. The Debtors have suffered no prejudice by the withdrawal. As such, the doctrine of judicial admission is not applicable. Furthermore, the original value asserted by Huntington was never relied upon by the Court. The Court made no determination of value for any purpose. Nothing in the record indicates that Huntington's actions were intended to take advantage of, or play "fast and loose," with Court.[3] Therefore, the doctrine of judicial estoppel does not apply. Finally, allowing the Parties to move forward in this fashion will allow the true value of the Property to be decided on the merits, with both Parties having the opportunity to seek full appraisals and to present all of their evidence to the Court.

For the foregoing reasons, the *Summary Judgment Motion* will be denied. An appropriate Order will be entered.

---

**3.** Huntington no more played "fast and loose" with the Court than did the Debtors, who alleged a value of $285,000 for the Property in their initial *Schedule A,* and once the faulty BPO was in hand, quickly changed its allegation of value to $169,000 and immediately filed a Plan and the within Complaint in an attempt to bind Huntington to the reduced value.