**Geraldine MILLER, Plaintiff,**

v.

**STONEHENGE/FASA–TEXAS, JDC, L.P., et al., Defendants.**

**No. 3–97–CV–2594–R.**

United States District Court, N.D. Texas, Dallas Division.

Feb. 2, 1998.

462

Gerrit M. Pronske, Gerrit M. Pronske, P.C., Robert L. Hoffman, Law Offices of Robert Hoffman, Dallas, TX, for Plaintiff.

Brenda Collier, Collier & Associates, Dallas, TX, pro se.

Barbara Emerson, Ginger A. Tye, Bellinger & DeWolf, L.L.P.; Dallas, TX, for Defendants.

## ORDER

BUCHMEYER, Chief Judge.

After making an independent review of the pleadings, files and records in this case, and the Findings and Recommendation of the United States Magistrate Judge, I am of the opinion that the Findings and Conclusions of the Magistrate Judge are correct and they are adopted as the Findings and Conclusions of the Court.

## FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

KAPLAN, United States Magistrate Judge.

Defendant Brenda H. Collier has filed a motion to dismiss for failure to state a claim upon which relief can be granted. The motion has been referred to the United States magistrate judge for recommendation pursuant to 28 U.S.C. § 636(b).

### I.

The Resolution Trust Corporation obtained a $23.6 million judgment against Vance C. Miller on December 11, 1995. *RTC v. Miller*, No. 3–94–CV–0912–G (N.D.Tex.), *aff'd as modified*, No. 96–10037, 1997 WL 119899 (5th Cir. March 10, 1997). The judgment was subsequently assigned to Stonehenge/FASA–Texas, JDC, L.P. As part of its collection efforts, Stonehenge obtained a writ of execution and an order in aid of execution. The order provides, in pertinent part, that:

the U.S. Marshal ... together with one or more representatives of [Stonehenge] and its attorneys and agents, including videographers, are hereby authorized to serve the Writ of Execution on any person over the age of eighteen years old present on the premises of 3815 Beverly Drive, Dallas, Texas, and to enter onto and into the residence and onto the premises at and adjacent to the residence of Vance C. Miller, at 3815 Beverly Drive, Dallas, Texas, using reasonable force as necessary, there to search for and seize all non-exempt property located thereon belonging to Vance C. Miller, in an amount when val-

ued, at not more than the amount of the judgment.

ORDER, 10/14/97 at 1. The marshal was further authorized to open and examine the contents of any locked compartment and change any locks to limit access by the judgment debtor.

Brenda Collier is an attorney who represents Stonehenge in its collection efforts. On October 15, 1997, Collier and two federal marshals appeared at the Miller home to execute the writ. (Petition ¶ 9). They were accompanied by a videographer, three jewelry appraisers, a locksmith, and two large moving vans. (Petition ¶ 9). Vance Miller was out of town on business. His wife, Plaintiff Geraldine Miller, was the only person at home. (Petition ¶ 10). Plaintiff immediately telephoned her two sons and her husband's attorney. All three arrived shortly thereafter. (Petition ¶ 10). Collier was reminded that only Vance Miller's non-exempt assets were subject to seizure. Plaintiff's sons insisted that there was no such property in the house. (Petition ¶ 13). Nevertheless, Collier demanded access to the premises and, under threat of force, inspected, inventoried, and videotaped plaintiff's "personal and intimate" property and effects. (Petition ¶¶ 15–18.) Plaintiff further alleges that Collier accosted her as she tried to leave the house. Collier demanded to know where plaintiff was going and told her that she could not leave. (Petition ¶ 11.)

Plaintiff claims that these actions caused her great distress and embarrassment. She has sued Stonehenge and Collier for abuse of process, invasion of privacy, intentional infliction of emotional distress, conspiracy, and civil rights violations.[1] Collier seeks to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. She argues that: (1) she is not liable for actions taken on behalf of her client; and (2) the lack of privity bars any claims against her. Plaintiff has filed a response to the motion. The parties also presented oral argument at a hearing on January 23, 1998. This matter is now ripe for determination.

October 22, 1997.

---

1. Plaintiff filed suit in state court on October 20, 1997. The case was removed to federal court on

## II.

A district court may dismiss a complaint for failure to state a claim if the plaintiff cannot prove any set of facts that would entitle her to relief. FED.R.CIV.P. 12(b)(6); *Oppenheimer v. Prudential Securities, Inc.,* 94 F.3d 189, 194 (5th Cir.1996). The court must construe the complaint in the light most favorable to plaintiff and assume that the factual allegations set forth therein are true. *Benton v. United States,* 960 F.2d 19, 21 (5th Cir.1992). However, dismissal is proper where "even the most sympathetic reading of [the] pleadings uncovers no theory and no facts that would subject the present defendants to liability." *Jacquez v. Procunier,* 801 F.2d 789, 791–92 (5th Cir.1986).

## III.

 As a general rule, a party may not sue opposing counsel under any theory of recovery for "acts or omissions undertaken as part of the discharge of their duties as attorneys to opposing parties in the same lawsuit." *Taco Bell Corp. v. Cracken,* 939 F.Supp. 528, 532 (N.D.Tex.1996) (Fitzwater, J.). *See also Renfroe v. Jones & Associates,* 947 S.W.2d 285, 288 (Tex.App.—Fort Worth 1997, writ denied), *petition for rehearing filed* (January 2, 1998); *Bradt v. West,* 892 S.W.2d 56, 71–72 (Tex.App.—Houston [1st Dist.] 1994, writ denied). This rule protects the public's interest in loyal, faithful, and aggressive representation by the legal profession:

> An attorney is . . . charged with the duty of zealously representing his clients within the bounds of the law. In fulfilling this duty, an attorney 'ha[s] the right to interpose a defense or supposed defense and make use of any right in behalf of such client or clients as [the attorney] deem[s] proper and necessary, without making himself subject to liability in damages . . .' Any other rule would act as a severe and

crippling deterrent to the ends of justice for the reason that a litigant might be denied a full development of his case if his attorney were subject to the threat of liability for defending his client's position to the best and fullest extent allowed by law, and availing his client of all rights to which he is entitled.

*Bradt,* 892 S.W.2d at 71 (citations omitted). Thus, an attorney may assert his client's rights without fear of personal liability to the opposing party. *Id.* at 76; *Renfroe,* 947 S.W.2d at 287. The court should focus on the type of conduct engaged in by the attorney, "rather than on whether the conduct was meritorious in the context of the underlying lawsuit." *Taco Bell Corp.,* 939 F.Supp. at 532, *quoting Bradt,* 892 S.W.2d at 72. Stated differently, an attorney cannot be held liable to a third party for conduct that requires "the office, professional training, skill, and authority of an attorney." *Id.* Incorrect, meritless, and even frivolous conduct is not actionable if it satisfies this standard. *Id.; Bradt,* 892 S.W.2d at 72.[2]

 Plaintiff argues that this rule does not apply to Collier because she committed a variety of intentional torts beyond the scope of her legal representation. This argument proves too much and has been rejected. *Taco Bell Corp.,* 939 F.Supp. at 533. Clearly, any intentional tort would be beyond the scope of an attorney's justifiable authority. Plaintiff cannot salvage an otherwise untenable claim merely by characterizing it as tortious.

 On the other hand, the rule does not provide absolute immunity for every tort committed by a lawyer, however tangentially related to her professional role. For example, an attorney may be held liable for assaulting the opposing party or lawyer. *See Bradt,* 892 S.W.2d at 72. An attorney also

---

**2.** Plaintiff points out in her response that *Taco Bell, Renfroe,* and *Bradt* all involve claims brought against attorneys by opposing parties in *the same lawsuit.* Here, plaintiff was not a party to the underlying civil action and is not liable under the judgment. It seems to the Court that this is a distinction without a difference. The rationale for the rule insulating a lawyer from liability for conduct that requires "the office,

professional training, skill, and authority of an attorney" is equally applicable to actions brought by third-parties who did not participate in the underlying litigation. The threat of liability from *any source* could potentially deter a lawyer from exercising independent professional judgment on behalf of her client. Counsel for plaintiff tacitly conceded as much at the hearing and quickly retreated from this argument.

may be subject to liability for committing fraud or conspiring with her client to defraud another. *See Transtexas Gas Corp. v. Stanley,* 881 F.Supp. 268, 270–71 (S.D.Tex.1994); *Likover v. Sunflower Terrace II, Ltd.,* 696 S.W.2d 468, 472 (Tex.App.—Houston [1st Dist.] 1985, no writ); *Kirby v. Cruce,* 688 S.W.2d 161, 164–65 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *Bourland v. State of Texas,* 528 S.W.2d 350, 353–55 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.). These cases demonstrate that, although "[a] lawyer is authorized to practice his profession, to advise his clients, and to interpose any defense or supposed defense, without making himself liable for damages... [he] is liable if he knowingly commits a fraudulent act that injures a third person, or if he knowingly enters into a conspiracy to defraud a third person." *Likover,* 696 S.W.2d at 472.

It is difficult to reconcile this line of cases with the holdings of *Taco Bell, Renfroe,* and *Bradt.* One distinction is that *Bradt* and its progeny involve actions taken in the context of litigation, such as filing motions or making legal arguments. The other cases typically involve lawyers assisting their clients in perpetuating fraudulent business schemes. However, even this latter circumstance could arguably require "the office, professional training, skill, and authority of an attorney" to bring about the fraud. For example, the lawyer in *Bourland* was held liable for his role in preparing legal documents creating entities through which the defendants perpetuated a fraudulent real estate scheme. *Bourland,* 528 S.W.2d at 353–54. The preparation of legal documents clearly involves the professional training and skill of an attorney.

■ The Court need not resolve this conundrum in order to rule on the pending motion. Rather, the allegations against Collier do not involve the type of conduct that requires "the office, professional training, skill, and authority of an attorney." Plaintiff has sued Collier for her actions in executing a writ of execution. The U.S. Marshal is responsible for serving the writ.[3] TEX. R. CIV. P. 622, 629 & 637; *Southwestern Bell Telephone Co. v. Wilson,* 768 S.W.2d 755, 760 (Tex.App.—Corpus Christi 1988, writ denied). Counsel for the judgment creditor is not an anticipated or essential participant in this process. Collier points out that she was authorized to participate in the execution of the writ by court order. However, this does not imbue the process with any additional significance. Collier may have been present as a representative of her client, but her skills *as an attorney* had no role in the events that transpired. Moreover, the order did not authorize Collier to "accost" plaintiff on the way to her car or prevent her from leaving the premises. Plaintiff has stated viable claims against Collier based on these events.

■ Similarly, the lack of privity between Collier and plaintiff does not bar this suit. The concept of privity protects an attorney from liability to anyone other than her client for inadequacies in the performance of her professional duties. *See Thompson v. Vinson & Elkins,* 859 S.W.2d 617, 621 (Tex.App.—Houston [1st Dist] 1993, writ denied); *Martin v. Trevino,* 578 S.W.2d 763, 771 (Tex. Civ. App—Corpus Christi 1978, writ ref'd n.r.e.); *Morris v. Bailey,* 398 S.W.2d 946, 947 (Tex.Civ.App.—Austin 1966, writ ref'd n.r.e.). The Court has found that Collier was not performing any professional duties by assisting in the execution of the writ. The concept of privity therefore has no application in this case.

For these reasons, Collier's motion to dismiss should be denied.

January 26, 1998.

---

3. The federal rules provide that judgments are to be executed in accordance with the practice and procedure of the state in which the district court is located. FED. R. CIV. P. 69.