Opinion issued March 20, 2008 















In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00696-CV




DIXON FINANCIAL SERVICES, LTD. AND HYPERDYNAMICS
CORPORATION, Appellants

V.

GREENBERG, PEDEN, SIEGMYER & OSHMAN, P.C., GERALD
SIEGMYER, RON BEARDEN, AND R.F. BEARDEN ASSOCIATES, INC., 
Appellees




On Appeal from the 215th Judicial District Court 
Harris County, Texas
Trial Court Cause No. 2001–06263A




MEMORANDUM OPINION ON REHEARING

          Appellants, Dixon Financial Services, Ltd. and Hyperdynamics Corporation,
have filed a motion for en banc reconsideration of our opinion. We withdraw our
opinion of November 15, 2007 and substitute this opinion in its stead. Our
disposition and judgment remain unchanged. Because we grant rehearing and issue
a new opinion, appellants’ motion for en banc reconsideration of our prior opinion
is moot. See Brookshire Brothers, Inc. v. Smith, 176 S.W.3d 30, 40 (Tex.
App.—Houston [1st Dist.] 2004, pet. denied) (supp. op.); Butler v. State, 6 S.W.3d
636, 637 n.1 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d).
          The trial court granted summary judgment against appellants, Dixon Financial
Services, Ltd. (“Dixon Financial”) and Hyperdynamics Corporation
(“Hyperdynamics”), in favor of appellees, Greenberg, Peden, Siegmyer & Oshman,
P.C. (“Greenberg Peden”), Gerald Siegmyer (“Siegmyer”), Ron Bearden, and R.F.
Bearden Associates, Inc. (collectively, “Bearden”). The trial court then severed
appellants’ claims against appellees into a separate cause making the earlier
interlocutory summary judgment final and appealable. In two issues, appellants
contend that the trial court erred by granting summary judgment in appellees’ favor
and by granting the severance. 
          We affirm.
 
Background
          On September 9, 1999, Bearden, Erin Oil Corporation, and Bill Knollenberg,
principal of Erin Oil (collectively “Erin Oil”), obtained an arbitration award against
Michael Watts, a securities broker, and Texas Capital Securities, the securities
brokerage firm for whom Watts worked. As part of the award, Bearden and Erin Oil
were awarded, jointly and severally, “140,000 shares of common stock and 200,000
warrants in Hyperdynamics.” In the arbitration proceeding, Greenberg Peden
represented Bearden, and the law firm of Johnson, Burnett, & Chang (“Johnson
Burnett”) represented Erin Oil. 
          On January 6, 2000, Johnson Burnett attorney James Chang sent a letter to
notify Hyperdynamics’s transfer agent, Fidelity Transfer Company, of the arbitration
award against Watts and Texas Capital Securities. Specifically, Chang wrote, in
relevant part, 
[T]he purpose of this letter is to notify you in writing of such an
arbitration award and to demand that Fidelity Transfer Company
immediately cease and desist from transferring, conveying, or otherwise
delivering on the books of [Hyperdynamics] any shares of common
stock or other securities of [Hyperdynamics] that are legally or
beneficially owned, held, or in the name or custody of Texas Capital
and/or Watts or any of their respective affiliates or that are deposited in
any accounts maintained or managed by Texas Capital and/or Watts or
any of their respective affiliates.
          On January 12, 2000, Chang sent another letter to Fidelity Transfer informing
Fidelity, “We have recently learned that some of [the] securities of [Hyperdynamics]
that our client is entitled to in accordance with the [arbitration award] are held or
deposited in an account in the name of Island Communications Investments, Ltd.” 
Chang continued, 
[T]he purpose of this letter is to demand in writing that Fidelity Transfer
Company immediately cease and desist from transferring, conveying, or
otherwise delivering on the books of [Hyperdynamics] any shares of
common stock or other securities of [Hyperdynamics] that are legally or
beneficially owned, held, or in the name or custody of Island
Communications Investments, Ltd.

          Also on January 12, 2000, Bearden and Erin Oil filed a verified petition
(hereafter referenced as “the Watts litigation”) seeking confirmation of the arbitration
award and requesting injunctive relief “in aid thereof” against Texas Capital, Michael
Watts, and Hyperdynamics. Greenberg Peden attorney Gerald Siegmyer signed the
petition on behalf of Bearden, and Chang, who represented Erin Oil, signed the
petition’s verification. 
          The petition included the following allegations in support of injunctive relief:
 
[Bearden and Erin Oil] are the owners of certain brokerage accounts at
Texas Capital. The account numbers are 954666, 954682, and 062145. 
Watts was the broker assigned to the accounts. The accounts are
supposed to contain 143,000 shares of HyperDynamics common stock,
and Warrants to purchase 200,000 additional shares of common
stock. . . .
 
. . . . 
 
Watts has already admitted that, without authority to do so, he caused
some securities in the accounts to be sold and used to pay his personal
attorney. Hence, Watts and Texas Capital have already absconded with
some securities that should have been available to satisfy the [arbitration
award] and may very well do so again, if they have not already
liquidated the accounts.
 
. . . . 
 
HyperDynamics is a publically traded corporation whose president,
chief executive officer, chief financial officer and principal individual
shareholder is Kent Watts, the brother of [Michael] Watts. [Michael]
Watts is listed in HyperDynamics’ [most recent] 10-K Report . . . as a
“consultant” to the company. . . .
 
At the arbitration hearing, the uncontested evidence showed that:
 
a.Watts had stated that he had removed shares of
HyperDynamics stock from [Bearden and Erin Oil’s]
accounts and sold them to pay his personal legal
fees.
 
b.Watts controlled at least two offshore Cayman
Island trusts which maintained brokerage accounts
at Texas Capital and for which Watts held trading
authorization. The accounts were denominated as
Island Communications Investments, Ltd. accounts,
and were numbered 954681 and 954836. Watts
transferred other shares from [Bearden and Erin
Oil’s] accounts into the Island Communications’
accounts and stated that he would transfer shares
and warrants of HyperDynamics into [Bearden and
Erin Oil’s] accounts; and 
 
c.After Texas Capital ceased doing business, the
records of the Island Communications accounts
controlled by Watts had been removed from Texas
Capital’s file cabinet where they had been stored. 
Watts had access to the file cabinet.
 
[Bearden and Erin Oil] now cannot locate their accounts, or the shares
or warrants of HyperDynamics that are supposed to be in the accounts. 
Watts has openly represented to others that whatever assets he has are
located offshore and could never be reached by his creditors. It is
reasonable to suspect that Watts and/or Texas Capital may cause any
assets otherwise subject to execution in Texas to be moved offshore to
hide, delay or defraud [Bearden and Erin Oil]. [Bearden and Erin Oil]
have reason to believe that the Island Communications accounts contain
some 574,100 shares HyperDynamics stock.

          Bearden and Erin Oil then alleged that “[t]here is nothing to stop Watts and
Texas Capital from absconding with securities before [Bearden and Erin Oil] are able
to carry out and execute the [arbitration award] . . . .” (Emphasis in original.) To
support their request for a temporary restraining order, Bearden and Erin Oil asserted
that “Defendants should be prevented from transferring, conveying, assigning, selling
or otherwise disposing of any securities of Hyperdynamics in which Texas Capital,
Watts, Island Communications, or [Bearden and Erin Oil] hold a legal or beneficial
interest . . . .”
          On January 13, 2000, the trial court in the Watts litigation signed a temporary
restraining order, requiring that the defendants in that litigation and their “agents,
representatives and persons acting in concert with any or all of them” to 
desist and refrain from directly or indirectly transferring, conveying,
assigning, selling, buying, disposing of, or otherwise delivering any
securities of HyperDynamics to any other party or parties that are legally
or beneficially owned by, or in the name of, Island Communications,
Watts and/or Texas Capital and that they be restrained from transferring
any securities out of the accounts that are or were previously account
nos. 954666, 954682, 062145, 954681 and 954836.
          By letter dated January 13, 2000, Chang forwarded to Fidelity Transfer a copy
of the temporary restraining order. Chang informed Fidelity Transfer that Watts,
Texas Capital, and Hyperdynamics “are enjoined and prohibited from directly or
indirectly transferring or otherwise delivering securities of [Hyperdynamics] that are
owned, held, or in the name or custody of Texas Capital Securities, Inc., Michael
E. Watts, and/or Island Communications Investment, Ltd.” (Emphasis in original.)
Chang pointed out as follows: “Please note that the TRO is specific in scope and is
not intended to prohibit the transfer, sale, and delivery of any of the securities of
[Hyperdynamics] by any other brokers, clearing agents, buyers, or sellers.”
          On January 21, 2000, the trial court then signed an “Order Continuing
Temporary Restraining Order,” which contained the same restraints as described in
the original temporary restraining order except that Hyperdynamics was no longer
subject to those restrictions. Hyperdynamics was, however, restrained from 
(1) permitting Michael Watts to exercise any warrant of
HyperDynamics, (2) knowingly allow[ing] Michael Watts to transfer
any warrant of HyperDynamics to a third-party who intends to exercise
it, (3) knowingly allowing Michael Watts to sell transfer, pledge, assign,
whether for value or not, (i) any share of HyperDynamics owned by him
of which it has actual knowledge, or (ii) any shares which are registered
in Michael Watts’ name, or in the name of Island Communications and
where the attempted conveyance is being made from Texas Capital
Scurities account nos. 954666, 95468, 062145, 9546881, and 954836.
          Bearden and Erin Oil entered into a settlement agreement with Hyperdynamics
in the Watts litigation on February 4, 2000. Bearden and Erin Oil agreed to dismiss
Hyperdynamics from the suit, and Hyperdynamics agreed that it would not allow
Michael Watts “to sell, transfer, assign or exercise any warrant or option to purchase
any securities of HyperDynamics.” 
          On February 7, 2000, Chang e-mailed Fidelity Transfer requesting that it
provide him with information regarding the Hyperdynamics stock. In this regard,
Chang inquired,
[D]o you have and can you give me any account information regarding
the shares of [Hyperdynamics] held in the name of Island
Communications Investments, Ltd.? We would like account information
with regard to the following account numbers which were initially
established with Texas Capital [and owned by Bearden and Erin
Oil] . . . 
          Chang listed the Texas Capital account numbers and then inquired, “[A]re any
shares of Hyperdynamics issued in the name of Island Communications traceable to
the foregoing account numbers?” A handwritten notation on the hard copy of the e-mail indicated that Fidelity Transfer could not provide the requested account
information.
          On February 9, 2000, Chang spoke with Fidelity Transfer’s attorney. The
attorney informed Chang that Kent Watts, principal of Hyperdynamics, had requested
that 575,500 shares of Hyperdynamics stock, evidenced by certificate numbers 1229,
1230, 1231, and 1232, and being held in Island Communications’s name, be
transferred to Dixon Financial. In a memo to the file, Chang noted that he had
informed Fidelity Transfer’s attorney that “there were adverse claimants to those
shares held in the name of Island and that [Hyperdynamics] may be prohibited from
transferring any shares in the name of Island.” 
          On February 2, 2001, Dixon Financial filed the instant suit against
Hyperdynamics, Fidelity Transfer, Greenberg Peden, Siegmyer, Bearden, Erin Oil,
Knollenberg, James Chang, Johnson Burnett, and two other partners of Johnson
Burnett. Dixon Financial alleged that it had owned “a significant number” of shares
of Hyperdynamics stock of which “certain shares” were “restricted shares” that
“could not be sold until the restriction expired on January 25, 2000.” Dixon Financial
alleged that it had requested Hyperdynamics to “issue unrestricted share certificates
when the restriction expired” and that Hyperdynamics had instructed Fidelity
Transfer “to cancel the restrictions” on the shares, “certificate nos. 1229, 1230, 1231,
and 1232 (representing 574,5000 shares) and issue unrestricted certificates.” 
          Dixon Financial alleged that it had intended “to sell these unrestricted shares
immediately” and that it was prevented from doing so by the named defendants. 
Dixon Financial asserted that Bearden, Erin Oil, and their respective attorneys,
particularly, Chang, Johnson Burnett, Siegmyer, and Greenberg Peden, acting as co-conspirators, prevented Hyperdynamics from transferring timely the unrestricted
shares to Dixon Financial. According to Dixon Financial, “[t]he conspiratorial
conduct was performed in a[n] effort to gain possession of Hyperdynamics stock
which they could use to pay the arbitration award [against Watts and Texas Capital]
to the damage of Dixon.” 
          Dixon Financial asserted that Chang and his co-conspirators had falsely
claimed and misrepresented that Dixon Financial’s stock shares held in the name of
Island Communications were subject to the arbitration award obtained by Bearden
and Erin Oil. Specifically, Dixon Financial alleged that Chang had misrepresented
to Fidelity on January 6, 2000 that “the 574,500 shares of stock of Hyperdynamics
held in the name of Island Communications was in fact property of Chang and
Siegmyer’s clients and the subject of an arbitration award.” Dixon Financial further
alleged that, based on the misrepresentation, Fidelity Transfer had “placed a ‘hold’
on the 574,500 shares of Hyperdynamics stock” owned by Dixon Financial thereby
preventing Dixon Financial “from exercising any ownership rights to the stock,
including its ability to sell the stock at a time when the stock was trading large
volume at a higher price.” 
          Dixon Financial also claimed that “[t]he defendants intentionally and
knowingly misrepresented facts to the court in order to obtain the Temporary
Restraining Order” on January 12, 2000. Dixon Financial asserted that the restraining
order was “sought and obtained” by “using a false and perjurious affidavit signed by
Chang.” Specifically, Dixon Financial contended that Chang “committed aggravated
perjury when he falsely swore he possessed personal knowledge” of the facts stated
in the application on which the temporary restraining order was obtained. 
          Dixon Financial further alleged that Chang, “with the knowledge and consent
of his co-conspirators [including Bearden, Greenberg Peden, and Siegmyer],
intentionally and knowingly on numerous times contacted Fidelity [Transfer] . . . and
wrongfully advised the transfer agent” that the temporary restraining order
“prohibited Fidelity [Transfer] from converting the restricted shares and issuing the
unrestricted shares to Dixon [Financial]” and that “the unrestricted shares which were 
to be issued to Dixon [Financial] were the same shares referenced in the Arbitration
Award and the Temporary Restraining Order.” 
          Based on these factual allegations, Dixon Financial asserted causes of action
against Bearden, Greenberg Peden, Siegmyer, Erin Oil, Chang, and Johnson Burnett
for conversion, abuse of process, tortious interference, and fraud. Dixon Financial
claimed that the defendants were jointly and severally liable based on theories of
conspiracy, agency, and concert of action. 
          Dixon Financial further alleged that, when Fidelity Transfer finally transferred
the stock to it, the stock “had dropped from a high in January 2000 of $7.75 per share
when Dixon Financial was entitled to receive the shares to less than $2.00 resulting
in a loss [to Dixon Financial] in excess of $3,000,000.” 
          Hyperdynamics also filed a cross-claim against Bearden, Greenberg Peden,
Siegmyer, Erin Oil, Chang, and Johnson Burnett alleging claims for negligent
misrepresentation, tortious interference, abuse of process, malicious prosecution of
a civil suit, and contribution. Like Dixon Financial’s claims, Hyperdynamics’s cross-claims were premised on allegations that Chang had misrepresented to the trial court
and to Fidelity Transfer the extent to which the arbitration award applied to
Hyperdynamics’s stock held in the name of Island Communications. 
          Hyperdynamics also asserted a cross-claim for breach of contract. 
Hyperdynamics asserted that the defendants breached the February 4, 2000 settlement
agreement between it, Erin Oil, and Bearden. Hyperdynamics claimed that, contrary
to the terms of the settlement agreement, the defendants continued to interfere with
the transfer of its stock to Dixon Financial after the settlement agreement was signed. 
          Greenberg Peden and Siegmyer filed motions for summary judgment asserting
that Dixon Financial had no cause of action against them, as a matter of law, for
conduct undertaken in the representation of a client. The attorneys based the motions
for summary judgment on Dixon Financial’s pleadings. The motions were not
supported by summary judgment evidence. Dixon Financial responded by offering
evidence to demonstrate that the attorneys engaged in “illegal” conduct outside the
protections of the claimed privilege. Concomitantly, Bearden filed a motion for
summary judgment contending that, as a matter of law, it could not be liable for the
conduct of its attorneys. 
          Greenberg Peden, Siegmyer, Chang, and Johnson Burnett also filed a joint
motion for summary judgment against Hyperdynamics. Among the grounds asserted
in the joint motion for summary judgment was a no-evidence challenge that
Hyperdynamics could present no evidence of damages, an essential element for each
of its cross-claims.
          The trial court granted the motions for summary judgment. After the trial court
severed Dixon Financial’s and Hyperdynamics’s claims against Greenberg Peden,
Siegmyer, and Bearden, this appeal followed.
Summary Judgment 
          In their second issue, appellants contend that the trial court erred by granting
summary judgment in favor of Greenberg Peden, Siegmyer, and Bearden based on the
summary judgment ground that Greenberg Peden was immune from liability because
the complained-of conduct was undertaken in the representation of a client.


 
Appellants generally recognize the existence of such qualified privilege, but contend
that the summary judgment record demonstrates that the conduct alleged in support
of their tort claims was outside the scope of this privilege. We first determine
whether Greenberg Peden properly obtained summary judgment on appellants’ tort
claims based on this privilege. 
A.      Applicable Summary Judgment Standard
          As movants for summary judgment, Greenberg Peden had to negate the
existence of genuine issues of material fact and establish their right to judgment as
a matter of law. Gibbs v. Gen. Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970);
Higbie Roth Const. Co. v. Houston Shell & Concrete, 1 S.W.3d 808, 811 (Tex.
App.—Houston [1st Dist.] 1999, pet. denied). A defendant can prevail by summary
judgment by establishing that the law does not recognize the cause of action for
which the plaintiff seeks to recover. Peeler v. Hughes & Luce, 909 S.W.2d 494,
497–98 (Tex. 1995); Higbie Roth Const., 1 S.W.3d at 811. Thus, as in this case, a
movant may file a summary judgment motion that, instead of proving or disproving
facts, shows the non-movant has no viable cause of action based on the non-movant’s
pleadings.


 Id. 
          To determine whether a cause of action exists under the circumstances pleaded,
the court must assume that all of the facts alleged by the non-movant are true and
indulge all reasonable inferences in the light most favorable to the non-movant. Id.
at 811–12. Though it must construe the non-movant’s pleadings broadly and indulge
all inferences in its favor in reviewing the summary judgment, a court is not required
to accept, as true, any legal conclusions stated in the pleadings. Id. at 812.
B.      Legal Principles Governing an Attorney’s Immunity from Suit
          The public has an interest in “loyal, faithful and aggressive representation by
the legal profession.” Bradt v. West, 892 S.W.2d 56, 71 (Tex. App.—Houston [1st
Dist.] 1994, writ denied). Texas law authorizes attorneys to “practice their
profession, to advise their clients, and to interpose any defense or supposed defense,
without making themselves liable for damages.” Kruegel v. Murphy, 126 S.W. 343,
345 (Tex. Civ. App.—Dallas 1910, writ ref’d); see Renfroe v. Jones & Assoc., 947
S.W.2d 285, 287 (Tex. App.—Fort Worth 1997, writ denied). The purpose behind
this well-established rule is to allow an attorney to fulfill his duty and zealously
represent his clients without subjecting himself to the threat of liability. See Bradt,
892 S.W.2d at 71. An attorney who could be held liable for statements made or
actions taken in the course of representing his client would be forced constantly to
balance his own potential exposure against his client’s best interest. Alpert v. Crain,
Caton & James, P.C., 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005,
pet. denied). Such a result would act as a severe and crippling deterrent to the ends
of justice because a litigant might be denied a full development of his rights. See
Bradt, 892 S.W.2d at 71. To promote zealous representation, courts have held that
an attorney has “qualified immunity” from civil liability, with respect to nonclients,
for actions taken in connection with representing a client in litigation. Alpert, 178
S.W.3d at 405. 
          This qualified immunity generally applies even if conduct is wrongful in the
context of the underlying lawsuit. Id. For example, a third party has no independent
right of recovery against an attorney for filing motions in a lawsuit, even if frivolous
or without merit, although such conduct is sanctionable or contemptible as enforced
by the statutory or inherent powers of the court. Id. (citing West, 892 S.W.2d at 72). 
Courts have refused to acknowledge an independent cause of action in such instances
“because making motions is conduct an attorney engages in as part of the discharge
of his duties in representing a party in a lawsuit.” Id. (citing West, 892 S.W.2d at 72). 
If an attorney’s conduct violates his professional responsibility, the remedy is public,
not private. Renfroe, 947 S.W.2d at 287. 
          This rule of qualified immunity focuses on the type of conduct in which the
attorney engages rather than on whether the conduct was meritorious in the context
of the underlying lawsuit. Id. at 288. “[I]t is the kind–not the nature–of conduct that
is controlling.” Taco Bell Corp. v. Cracken, 939 F. Supp. 528, 532–33 (N.D. Tex.
1996) (emphasis in original). Thus, an attorney cannot be held liable to a third party
for conduct that requires “the office, professional training, skill, and authority of an
attorney.” Miller v. Stonehenge/Fasa-Texas, JDC, L.P., 993 F. Supp. 461, 464 (N.D.
Tex. 1998) (citing Taco Bell, 939 F. Supp. at 532). “Incorrect, meritless, and even
frivolous conduct is not actionable if it satisfies this standard.” Id. 
          An attorney’s protection from liability is not boundless. An attorney can be
held liable by a third-party for actions that are not part of the discharge of his duties
to his client. See Bradt, 892 S.W.2d at 72. That is, the law does not provide absolute
immunity for every tort committed by a lawyer that may be tangentially related to his
professional role or which may occur during litigation. See id.; Miller, 993 F. Supp.
at 464. By way of extreme example, an attorney who assaults the opposing party or
lawyer during trial could be held liable for action. See Bradt, 892 S.W.2d at 72. 
          In addition, a cause of action may exist against an attorney who knowingly
commits a fraudulent act outside the scope of his legal representation of the client. 
Alpert, 178 S.W.3d 406 (citing Likover v. Sunflower Terrace II, Ltd., 696 S.W.2d
468, 472 (Tex. App.—Houston [1st Dist.] 1985, no writ)). If a lawyer participates
independently in fraudulent activities, his action is “foreign to the duties of an
attorney.” Id. (citing Likover, 696 S.W.2d at 472 (quoting Poole v. Houston & T.C.
Ry. Co., 58 Tex. 134, 137 (1882)). Moreover, attorneys may also be liable to
nonclients for negligent misrepresentation, under certain circumstances, despite the
absence of a general negligence duty to nonclients. See McCamish, Martin, Brown
& Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 791–94 (Tex. 1999).
C.      Analysis of Immunity Claim
          Appellants contend that summary judgment was improper because they alleged
and showed, through their summary judgment evidence, that Greenberg Peden
engaged in fraudulent conduct. Appellants’ tort claims rest on the premise that, in an
effort to satisfy their clients’ arbitration award, Greenberg Peden, primarily through
the conduct of alleged co-conspirator Chang, intentionally misrepresented the scope
of the arbitration award to obtain the Hyperdynamics stock owned by Dixon
Financial. The specific conduct cited by appellants is (1) Chang’s signing of the
verification in support of the petition for the temporary restraining order when Chang
did not have personal knowledge of the facts stated in the petition and (2) the
communications made by the attorneys, primarily by Chang, before and after the
issuance of the temporary restraining order, to Fidelity Transfer, which appellants
contend contained misrepresentations that all of the stock held in the name of Island
Communications was subject to the arbitration award when, in fact, the attorneys
knew only part of the stock was subject to the award. 
          To determine whether Chang’s conduct (and therefore Greenberg Peden’s) was
privileged, we focus on whether the conduct concerned the discharge of Chang’s
duties to his client. See Bradt, 892 S.W.2d at 72. Here, the signing of the verification
and the filing of the petition to obtain the temporary restraining order to secure his
client’s arbitration award was conduct in which an attorney engages to discharge his
duties to his client. See id. at 72. As mentioned, the focus is on the kind–not the
nature–of the attorney’s conduct. Taco Bell Corp., 939 F. Supp. at 532–33. The
signing and filing of an application for a temporary restraining order to aid in the
recovery of monies owed to a client under an arbitration award is not conduct
“foreign to the duties of an attorney” and is the kind of conduct protected from
liability. See id; see also Renfroe, 947 S.W.2d at 288 (holding no cause of action
against attorney for his participation in filing writ of garnishment with inaccurate
facts); McCampbell v. KPMG Peat Marwick, 982 F. Supp. 445, 448 (N.D. Tex. 1997)
(holding that plaintiff could not recover against attorney representing opposing party
in previous suit based on attorney’s allegedly false statements in affidavit and motion
for new trial filed in that suit). 
          Similarly, the communications between Chang and Fidelity Transfer were acts
taken and communications made to facilitate the rendition of legal services by Chang
to his client. See Alpert, 178 S.W.3d at 408. Even when taken as true and construed
broadly, Dixon Financial’s petition alleges that the underlying purpose of the
communications was for the attorneys to secure satisfaction of their clients’
arbitration award. Again, such action is the kind of conduct in which an attorney
engages when discharging his duties to his client. Whether the substance of the
communications was incorrect or overstated does not change the kind of conduct in
which Chang engaged. As attorneys representing parties given an arbitration award,
Chang, his firm, and Greenberg Peden were entitled to advance their clients’ positions
and pursue satisfaction of the arbitration award without fear of personal liability. 
Characterizing an attorney’s action in advancing his client’s rights as fraudulent does
not change the rule that an attorney cannot be held liable for discharging his duties
to his client. See Lewis v. Am. Exploration Co., 4 F. Supp.2d 673, 679 (S.D. Tex.
1998) (citing Taco Bell, 939 F. Supp. 533). A plaintiff, such as Dixon Financial or
Hyperdynamics, should not be allowed to “salvage an otherwise untenable claim
merely by characterizing it as tortious.” Miller, 993 F. Supp. at 464. 
          We recognize that this Court, in Likover v. Sunflower Terrace II, Ltd., upheld
a jury’s award against an attorney based on conspiracy to defraud. 696 S.W.2d 468,
473 (Tex. Civ. App.—Houston [1st Dist.] 1985, no writ). However, Likover, unlike
our later decision in Bradt, involved allegations that an attorney assisted clients in
fraudulent business schemes and did not involve conduct taken in the context of
litigation or another adversarial proceeding. See Miller, 993 F. Supp. at 465 (noting,
“One distinction is that Bradt and its progeny involve actions taken in the context of
litigation, such as filing motions or making legal arguments. The other cases
[including Likover] typically involve lawyers assisting their clients in perpetuating
fraudulent business schemes.”). 
          Here, the conduct cited by appellants occurred in an adversarial context. 
Specifically, the attorneys engaged in the complained-of conduct as part of post-arbitration proceedings, an adversarial process similar to litigation. Much of the cited
conduct occurred as part of the initiation of, or subsequent to, the litigation filed to
confirm and to recover the arbitration award. Thus, the attorneys’ conduct alleged in
this case is distinct from that in Likover.
          Appellants contend that the trial court’s decision to grant summary judgment
on Hyperdynamics’s negligent misrepresentation claim is contrary to the holding of
McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787
(Tex. 1999). In McCamish, the supreme court held that, under certain limited
circumstances, a nonclient may bring a Restatement of Torts section 552 negligent
misrepresentation claim against an attorney.


 991 S.W.2d 787, 793–795 (Tex. 1999). 
The McCamish court explained that, with respect to a section 552 suit between a
nonclient and an attorney, “[a] typical negligent misrepresentation case involves one
party to a transaction receiving and relying on an evaluation, such as an opinion
letter, prepared by another party’s attorney.” Id. at 793. For example, in McCamish,
a nonclient brought a section 552 claim against an attorney based on the attorney’s
representations indicating that a settlement agreement complied with a federal statute. 
Id. at 789–90. 
          Here, Hyperdynamics did not allege that appellees, through Chang, conveyed
a legal opinion or evaluation to Fidelity Transfer regarding the Hyperdynamics stock;
rather, it alleged that appellees contacted Fidelity Transfer and asserted an ownership
interest in Hyperdynamics’s stock based on the arbitration award. Unlike the
representations mentioned in McCamish, the ones at issue here were objective, non-evaluative claims with respect to the stock. 
          The McCamish court also pointed out that the nature of the relationship
between the attorney and the nonclient is significant when determining whether a
nonclient may successfully bring a section 552 claim against an attorney. In this
regard, the court wrote, 
Generally, courts have acknowledged that a third party’s reliance on an
attorney’s representation is not justified when the representation takes
place in an adversarial context. This adversary concept reflects the
notion that an attorney, hired by a client for the benefit and protection
of the client’s interests, must pursue those interests with undivided
loyalty (within the confines of the Texas Disciplinary Rules of
Professional Conduct), without the imposition of a conflicting duty to
a nonclient whose interests are adverse to the client. Because not every
situation is clearly defined as adversarial or nonadversarial, the
characterization of the inter-party relationship should be guided, at least
in part, by the extent to which the interests of the client and the third
party are consistent with each other. 
Id. at 794 (internal citations and quotations omitted). Here, Hyperdynamics’s cross
claim, asserting a section 552 claim, indicates that the interests of appellees and
Fidelity Transfer were not consistent. The pleading alleges that appellees’
representations interfered with Fidelity Transfer’s duty to issue timely unrestricted
stock certificates of Hyperdynamics stock to Dixon Financial, as directed. Based on
Fidelity Transfer’s alleged failure to issue the stock certificates timely,
Hyperdynamics’s cross claim reflects that it also sued Fidelity Transfer. Hence, the 
cross claim indicates that appellees’ and Fidelity Transfer’s interests were not aligned
and can most accurately be characterized as adverse.
          Hyperdynamics’s cross claim further indicates that Fidelity Transfer’s reliance
on appellees’ representations was not “justifiable,” as required. See id. 
Hyperdynamics alleged in its cross claim that “Fidelity Transfer knew or should have
known that the Dixon shares were certificated and could not have been shares in
which [appellees] held an interest.” Though it contends that Fidelity Transfer relied
on appellees’ representations regarding the stock, Hyperdynamics does not allege that
the reliance was reasonable or justifiable; rather, its allegations indicate that Fidelity
Transfer’s reliance was not justifiable.
          In sum, we disagree with appellants that an analysis under McCamish requires
us to reverse the trial court’s summary judgment with respect to Hyperdynamics’s
negligent misrepresentation claim. The subject representations in this case are not
evaluative type representations like those described in McCamish. Moreover, given
the allegations in Hyperdynamics’s cross-claim, Fidelity Transfer did not justifiably
rely on appellees’ alleged misrepresentations.
          Appellants also assert that immunity should not apply because Dixon Financial
was not a party in the Watts litigation and “most of Hyperdynamics’s claims are
derivative of Dixon’s.” This argument has been considered and rejected by other
courts. In Miller, the court wrote, 
It seems to the Court that this is a distinction without a difference. The
rationale for the rule insulating a lawyer from liability for conduct that
requires “the office, professional training, skill, and authority of an
attorney” is equally applicable to actions brought by third-parties who
did not participate in the underlying litigation. The threat of liability
from any source could potentially deter a lawyer from exercising
independent professional judgment on behalf of her client. 
993 F. Supp. at 464 at n.2; see also Collin County v. Johnson, No. 05-99-00034-CV,
1999 WL 994039, at *4 (Tex. App.—Dallas Nov. 3, 1999, no pet.) (not designated
for publication) (rejecting assertion that attorney’s conduct was actionable because
plaintiff was not party to underlying litigation). We agree with the reasoning in
Miller. Whether a plaintiff who institutes the suit against an attorney was also a party
in the underlying litigation is not a determinative factor in deciding whether the
attorney’s conduct is actionable.


 
          Construing the pleadings and summary judgment evidence liberally in favor
of appellants, the acts alleged by appellants constitute conduct undertaken by
attorneys to assist a client in securing and recovering an arbitration award. Such
conduct is the kind of conduct in which an attorney engages in discharging his duties
to his client. Labeling the conduct as fraudulent does not automatically make it
actionable and the attorneys liable for tort damages. We conclude that Greenberg
Peden, Siegmyer, and Bearden were, as a matter of law, not liable for the conduct
alleged in this case. Accordingly, we hold that the trial court properly granted
summary judgment in favor of Greenberg Peden, Siegmyer, and Bearden against
Dixon Financial and against Hyperdynamics with regard to its tort claims.
D.      Hyperdynamics’s Breach of Contract Claim
          In the second issue, Hyperdynamics also challenges the trial court’s summary
judgment against it on its breach of contract cross-claim. In its opening brief,
Hyperdynamics contends that “there can be no privilege to breach settlement
agreements[,] and the trial court erred in implicitly holding that there was.” In other
words, Hyperdynamics contends that, even if viable, the attorney privilege discussed
above does not act to preclude its breach of contract cross-claim.
          The joint motion for summary judgment as to Hyperdynamics’s cross-claims
was both a traditional motion for summary judgment, based on the attorney privilege,
and a no-evidence motion for summary judgment. The no-evidence motion for
summary judgment asserted that “Hyperdynamics has offered no evidence of any
actual damages suffered.” (Emphasis in original.) The no-evidence motion for
summary judgment asserted that “damages” was an essential element of each of
Hyperdynamics’s cross-claims, which necessarily included Hyperdynamics’s breach
of contract claim. Greenberg Peden and Bearden asserted that Hyperdynamics could
produce no evidence that it suffered damages as a result of the alleged breach of
contract because the damages claimed by Hyperdynamics for that cause of action
were damages allegedly suffered by Dixon Financial, not Hyperdynamics. 
          When the trial court does not specify the basis for its summary judgment, as
here, the appealing party must show it is error to base it on any ground asserted in the
motion. Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995). If summary
judgment may have been rendered, properly or improperly, on a ground not
challenged, the judgment must be affirmed. Ellis v. Precision Engine Rebuilders,
Inc., 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing
Holloway v. Starnes, 840 S.W.2d 14, 23 (Tex. App.—Dallas 1992, writ denied)).
          In its opening brief, Hyperdynamics did not challenge this ground with respect
to its breach of contract claim. Nonetheless, the summary judgment against
Hyperdynamics on its breach of contract claim may have been granted, properly or
improperly, on this unchallenged ground. See id. Because it does not negate the
no-evidence ground with regard to damages, we hold that Hyperdynamics did not
meet its appellate burden to show that the trial court erred in granting summary
judgment on its breach of contract claim.


 See id.; see also Bynum v. Prudential
Residential Servs., Ltd. P’shp, 129 S.W.3d 781, 795 (Tex. App.—Houston [1st Dist.]
2004, pet. denied) (following Ellis ).
          We hold that the trial court properly granted summary judgment in favor of
Greenberg Peden, Siegmyer, and Bearden on all of Dixon Financial’s and
Hyperdynamics’s claims. 
          We overrule appellants’ second issue.
Severance of Dixon Financial’s and Bearden’s Claims
          In their first issue, Dixon Financial and Hyperdynamics contend that the trial
court erred by severing their claims against Greenberg Peden, Siegmyer, and Bearden
(referred to as “appellees” for purposes of this issue) from the remainder of the case.
          As pointed out by appellees, Dixon Financial has waived its right to complain
about the severance on appeal because it did not object to the severance in the trial
court. Guerra v. Texas Dep’t of Protective & Regulatory Servs., 940 S.W.2d 295,
299 (Tex. App.—San Antonio 1997, no pet.); see Tex. R. App. P. 33.1. For this
reason, only the severance of Hyperdynamics’s claims is at issue.
          Rule 41 of the Texas Rules of Civil Procedure provides that “[a]ny claim
against a party may be severed and proceeded with separately.” Tex. R. Civ. P. 41.
We will not reverse a trial court’s order severing a claim unless the trial court abused
its discretion. Guar. Fed. Sav. Bank v. Horseshoe Op. Co., 793 S.W.2d 652, 658
(Tex. 1990). 
          A claim is properly severable if (1) the controversy involves more than one
cause of action, (2) the severed claim is one that would be the proper subject of a
lawsuit if independently asserted, and (3) the severed claim is not so interwoven with
the remaining action that they involve the same facts and issues. Id. The Supreme
Court of Texas has explained that avoiding prejudice, doing justice, and increasing
convenience are the controlling reasons to allow a severance. F.F.P. Operating
Partners, L.P. v. Duenez, No. 02-0381, 2007 WL 1376357, at *11 (Tex. May 11,
2007). 
          Given that the severance of Dixon Financial’s claims against appellees must
remain undisturbed due to the lack of objection in the trial court, we cannot conclude
that the trial court abused its discretion by severing Hyperdynamics’s claims against
appellees. The record shows that Hyperdynamics’s claims are primarily derivative
of, or closely aligned with, Dixon Financial’s claims against appellees. 
Hyperdynamics’s cross-claims against appellees are “interwoven with” Dixon
Financial’s claims against appellees, not with the remaining action. For this reason,
severance of Hyperdynamics’s cross-claims against appellees, along with Dixon
Financial’s claims, served to avoid prejudice, to do justice, and to increase
convenience. See id. Thus, we cannot say that the trial court abused its discretion by
severing Hyperdynamics’s claims against appellees. 
          We overrule appellants’ first issue.
 

Conclusion
          We affirm the judgment of the trial court.




                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Taft, Hanks, and Higley.