# IN THE SUPREME COURT OF TEXAS

No. 19-0036

LANDRY'S, INC. AND HOUSTON AQUARIUM, INC., PETITIONERS,

v.

ANIMAL LEGAL DEFENSE FUND, CHERYL CONLEY,
AND CARNEY ANNE NASSER, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

**Argued February 2, 2021**

JUSTICE BLACKLOCK delivered the opinion of the Court.

JUSTICE GUZMAN, JUSTICE BUSBY, and JUSTICE HUDDLE did not participate in the decision.

The court of appeals held that an attorney's pre-suit efforts to publicize allegedly defamatory statements are shielded from liability by either the judicial-proceedings privilege or attorney immunity. For the reasons explained below, we disagree.

An attorney who repeats his client's allegations to the media or the public for publicity purposes is not acting in the unique, lawyerly capacity to which Texas law affords the strong protection of immunity. Although attorneys often make publicity statements for their clients, wrapping these statements in an absolute privilege would unreasonably shield attorneys from

liability for defamatory statements that would be actionable if uttered by anyone other than an attorney. Attorneys who make such statements outside a judicial proceeding have many potential defenses to defamation liability, but the judicial-proceedings privilege and attorney immunity are not among them. The judgment of the court of appeals is reversed in part and affirmed in part, and the case is remanded to the court of appeals for further proceedings.

## I.

Landry's, Inc. owns Houston Aquarium, Inc., which operates the Downtown Aquarium in Houston.[1] Four white Bengal tigers live at the aquarium. In March 2015, Cheryl Conley, a radio station owner, asked Landry's for a behind-the-scenes tour of the tiger habitat. Landry's obliged, allowing Conley to photograph the tigers and their environs. Landry's also answered her questions about the animals. Conley did not run a story about the tigers on her radio station or elsewhere.

In October 2015, Conley contacted the Animal Legal Defense Fund ("ALDF") about the tigers. ALDF is an animal rights organization founded by attorneys. According to ALDF, its mission is to "protect the lives and advance the interests of animals through the legal system," and it operates as "a private law firm." On September 19, 2016, Carney Anne Nasser, an attorney at ALDF, together with an attorney from Irvine & Conner PLLC, sent Landry's a 60-day notice of intended suit (the "Notice Letter") pursuant to the Endangered Species Act ("ESA"). *See* 16 U.S.C. § 1540(g)(2)(A)(i). The Notice Letter informed Landry's that ALDF and Conley "inten[ded] to sue" Landry's using the ESA's citizen-suit provision. *Id.* § 1540(g). The letter alleged that Landry's tiger facilities violated the ESA and violated portions of the "Tiger Care

---

[1] Both incorporated entities are parties to this dispute. The petitioners' briefing rarely distinguishes between the two companies, instead referring to the petitioners collectively as "Landry's." We will do the same.

2

Manual" produced by the Association of Zoos and Aquariums. Copies of the Notice Letter were sent to Landry's and to the Secretary of the Interior, as required by the ESA. *See id.* § 1540(g)(2)(A)(i). ALDF also sent the letter to Houston Mayor Sylvester Turner.

The same day, ALDF posted a press release on its website describing its service of the Notice Letter and criticizing the tigers' conditions. A link directed readers to the Notice Letter. ALDF also sent the Notice Letter and a copy of the press release to the *Houston Chronicle* and to ABC-Denver7, a TV station in Denver, where Landry's owns another tiger exhibit. ABC-Denver7 posted an article about the threatened suit: "Downtown Aquarium owners, Landry's, facing possible lawsuit over tigers at Houston location." The *Houston Chronicle* likewise ran a story about the allegations: "Animal rights group threatens to sue Landry's over tigers at Downtown Aquarium." A website called *The Dodo* also posted an article: "White Tigers Stuck In Aquarium Haven't Felt The Sun In 12 Years." During the ten days following the Notice Letter, ALDF made five Facebook posts regarding the tigers, and both Nasser and ALDF's executive director, Stephen Wells, tweeted about the tigers.

On November 17, 2016, 59 days after it received the 60-day Notice Letter, Landry's sued Conley, Nasser, and ALDF for defamation, business disparagement, tortious interference, abuse of process, trespass, and civil conspiracy. Landry's sought actual damages, exemplary damages, declaratory relief, an order that the defendants retract the allegedly defamatory statements, and an injunction prohibiting the defendants from "further defaming or disparaging Landry's." ALDF and Nasser filed a motion to dismiss pursuant to the Texas Citizens Participation Act ("TCPA"). Conley filed a similar motion shortly thereafter. The TCPA motions asserted that Landry's lacked clear and specific evidence for each essential element of its claims, that the judicial-proceedings

3

privilege barred all the claims, and that attorney immunity barred Landry's claims against Nasser and ALDF. Landry's responded to the TCPA motions and requested discovery under the TCPA. The trial court granted the TCPA motions to dismiss and denied Landry's request for discovery. The trial court ordered Landry's to pay TCPA sanctions of $250,000 to ALDF and $200,000 to Conley. The trial court also awarded attorney's fees to the defendants.

The court of appeals held that the judicial-proceedings privilege immunizes the defendants from liability for the challenged statements. Although the court of appeals observed in passing that some of the allegedly defamatory statements seemed to be mere opinions or otherwise non-actionable, it assumed that Landry's met its burden to establish by clear and convincing evidence each essential element of its defamation claims. The court of appeals then concluded that the judicial-proceedings privilege shields the defendants from liability for the challenged statements whether or not the statements are otherwise actionable. Specifically, the court of appeals held that the defendants' statements are privileged because they bear "some relation to an existing or proposed judicial proceeding," are "related to the proposed litigation," and the suit was "actually contemplated in good faith" when the statements were made. 566 S.W.3d 41, 58–60 (Tex. App.—Houston [14th Dist.] 2018). The court of appeals affirmed dismissal of Landry's tortious-interference and business-disparagement claims for the additional reason that Landry's failed to make a prima facie case that the defendants' statements caused Landry's damages. The court of appeals affirmed dismissal of all Landry's other claims as well.

The court of appeals also held that the trial court abused its discretion by awarding $450,000 in sanctions. It suggested remittitur of the sanctions to approximately $175,000. Landry's does not appeal the dismissal of its abuse of process, trespass, or civil conspiracy claims

4

to this Court. Nor does it appeal the denial of declaratory or injunctive relief. Landry's asks this Court to review (1) whether the defendants' statements are protected by the judicial-proceedings privilege or by attorney immunity, (2) the dismissal of its business-disparagement and tortious-interference claims, and (3) the sanctions award.

## II.

"We review de novo the court of appeals' determination[] that the parties met or failed to meet their burdens of proof under section 27.005" of the TCPA. *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019). We also review de novo, under the TCPA, "whether a nonmovant has presented clear and specific evidence establishing a prima facie case for each essential element of the challenged claims." *Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.); *see also Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017). A prima facie case "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015).

The sanctions award, by contrast, is reviewed for abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2017). A trial court abuses its discretion by "act[ing] without reference to guiding rules and principles to such an extent that its ruling was arbitrary or unreasonable." *Nath v. Tex. Child.'s Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014).

## III.

The "judicial-proceedings privilege" and "attorney immunity" are "independent [defenses] serving independent purposes." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 485 n.12 (Tex. 2015). The judicial-proceedings privilege is straightforward: "Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless

5

of the negligence or malice with which they are made." *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982). The "due course of a judicial proceeding" may include communications "in serious contemplation of such a proceeding." *Cantey Hanger*, 467 S.W.3d at 485 n.12 (internal quotation marks omitted). Although commonly applied in defamation cases, the privilege prohibits "any tort litigation based on the content of the communication" at issue. *Collins v. Zolnier*, No. 09-17-00418-CV, 2019 WL 2292333, at *3 (Tex. App.—Beaumont May 30, 2019, pet. denied).[2]

The judicial-proceedings privilege is an absolute privilege that covers "any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *James*, 637 S.W.2d at 916–17. The privilege facilitates the proper administration of justice by promoting "full and free disclosure of information . . . by participants in judicial proceedings." *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015); *see also Bird v. W.C.W.*, 868 S.W.2d 767, 772 (Tex. 1994) ("[T]he administration of justice requires full and free disclosure from witnesses unhampered by fear of retaliatory lawsuits.") (internal quotation marks omitted).

Although the judicial-proceedings privilege traditionally applies to "statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case," *James*, 637 S.W.2d at 916–17, it can also include statements made "preliminary to a proposed judicial proceeding," *Shell Oil*, 464 S.W.3d at 654 (quoting *Hurlbut v. Gulf Atl. Life Ins.*

---

[2] *See also Wilkinson v. USAA Fed. Sav. Bank Tr. Servs.,* No. 14-13-00111-CV, 2014 WL 3002400, at *6 (Tex. App.—Houston [14th Dist.] July 1, 2014, pet. denied) ("The judicial proceedings privilege is tantamount to immunity; where there is an absolute privilege, no civil action in damages for oral or written communications will lie, even though the language is false and uttered or published with express malice.") (internal quotation marks omitted).

*Co.*, 749 S.W.2d 762, 767 (Tex. 1987)). *See also* RESTATEMENT (SECOND) OF TORTS § 587 (1977) ("A party to a private litigation . . . is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding . . . ."). The privilege can also extend to the right of parties and counsel "to communicate with [a quasi-judicial body] touching the matters under [its] consideration, just as such persons would have the right to communicate with a court." *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 913 (Tex. 1942).

Attorney immunity "is an independent [defense] serving [an] independent purpose[]." *Cantey Hanger*, 467 S.W.3d at 485 n.12. It is not merely the lawyer's version of the judicial-proceedings privilege, although there is considerable overlap. Attorney immunity is a "comprehensive affirmative defense protecting attorneys from liability to non-clients." *Id.* at 481. It stems from the law's longstanding recognition that "attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages." *Id.* (quoting *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. App.—Dallas 1910, writ ref'd)). Attorney immunity is "intended to ensure 'loyal, faithful, and aggressive representation by attorneys employed as advocates.'" *Id.* (quoting *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App.—Dallas 2000, pet. denied)). When applying attorney immunity, we have stated that otherwise wrongful conduct by an attorney "is not actionable if it is part of the discharge of the lawyer's duties in representing his or her client." *Id.* (quoting *Toles v. Toles*, 113 S.W.3d 899, 911 (Tex. App.—Dallas 2003, no pet.)). Not just any action taken when representing a client qualifies for immunity, however. Instead, attorney immunity generally applies when attorneys act in the uniquely lawyerly capacity of one who possesses "the office, professional training, skill, and authority of an attorney." *Id*. at 482 (quoting *Dixon Fin. Servs., Ltd. v.*

7

*Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696, 2008 WL 746548, at *7 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied)).[3]

"Conversely, attorneys are not protected from liability to non-clients for their actions when they do not qualify as 'the kind of conduct in which an attorney engages when discharging his duties to his client.'" *Id.* (quoting *Dixon Fin. Servs.*, 2008 WL 746548, at *9). As we recognized in *Cantey Hanger*, some conduct by attorneys, "even if it occurred during a lawsuit, would be actionable because it does not involve the provision of legal services and would thus fall outside the scope of client representation." *Id.* Moreover, attorney immunity will not protect a lawyer when his "acts are entirely foreign to the duties of an attorney." *Id.* (quoting *Poole v. Hous. & T.C. Ry.*, 58 Tex. 134, 137 (1882)); *see also Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018) (same).

## A.

Texas law has been less than clear on whether the judicial-proceedings privilege applies to statements to the media or the public in which parties or their attorneys publicize defamatory allegations raised in a lawsuit. Some courts have extended the privilege to attorneys who publicize

---

[3] In *Cantey Hanger*, we reserved the question of whether attorney immunity's protections apply outside the litigation context, such as in transactional work. 467 S.W.3d at 482 n.6. Here, the allegedly defamatory public statements arose from anticipated litigation. Thus, as in *Cantey Hanger*, "we need not consider [attorney immunity's] application to an attorney's conduct that is unrelated to litigation but nevertheless falls within the ambit of client representation and requires the office, professional training, skill, and authority of an attorney." *Id.* The Court addresses that question in another decision issued today, *Haynes & Boone, LLP v. NFTD, LLC*, ___ S.W.3d ___ (Tex. 2021).

their clients' defamatory allegations to the media, as long as the allegations arise from a judicial proceeding.[4]  Other courts have declined to extend the privilege that far.[5]

We find the latter view more persuasive.  The reasoning of one court of appeals nearly a century ago remains compelling today:

> The privilege accorded a litigant which exempts him from liability for damages caused by false charges made in his pleadings, or in the court in the course of a judicial proceeding, cannot be enlarged into a license to go about in the community and make false and slanderous charges against his court adversary and escape liability for damages caused by such charges on the ground that he had made similar charges in his court pleadings.

*De Mankowski*, 300 S.W. at 122.  The judicial-proceedings privilege exists to facilitate the proper administration of the justice system.  It does so by relieving the participants in the judicial process from fear of retaliatory lawsuits for statements they make in connection with the proceeding itself.  *Bird*, 868 S.W.2d at 772 ("[T]he administration of justice requires full and free disclosure . . . unhampered by fear of retaliatory lawsuits.") (internal quotation marks omitted).  Statements to

---

[4] *See, e.g.*, *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 28 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (noting it was the first case to extend the privilege "to statements made in newspapers at some point before a judicial proceeding is actually filed"); *Dall. Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 238–40 (Tex. App.—Dallas 2000, pet. denied) ("[M]ere delivery of pleadings in pending litigation to members of the news media does not amount to a publication outside of the judicial proceedings . . . .  Likewise, . . . advising the media that a lawsuit has been filed, including a basic description of the allegations, has no practical effect different from providing the pleadings to the media.").

[5] *See, e.g.*, *Hearst Corp. v. Skeen*, 130 S.W.3d 910, 926 (Tex. App.—Fort Worth 2004) ("Although libelous statements made in connection with a judicial proceeding are absolutely privileged and will not serve as the basis of a civil action for libel or slander, . . . re-publication of such statements outside of the judicial context [to the media] waives the privilege."), *rev'd on other grounds*, 159 S.W.3d 633 (Tex. 2005); *Levingston Shipbuilding Co. v. Inland W. Corp.*, 688 S.W.2d 192, 196–97 (Tex. App.—Beaumont 1985, writ ref'd n.r.e.) ("Paden instructed a long-time employee and one of his attorneys to give [a copy of the lawsuit recently filed] to the news media" and, in doing so, "he stepped out of the umbrella of privilege."); *De Mankowski v. Ship Channel Dev. Co.*, 300 S.W. 118, 122 (Tex. App.—Galveston 1927, no writ) (same); *cf. Alaniz v. Hoyt*, 105 S.W.3d 330, 341, 343 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.) (relying on *De Mankowski*, noting "the [judicial-proceedings] privilege is lost if the holder of the privilege repeats the statements outside the protected context within which the statements originally were made"), *abrogated on other grounds by Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879 (Tex. 2009).

the media, by definition, are not made within a judicial proceeding. They are not directed to the court or the opposing party, and they play no formal role in the adjudicatory process.

The statements at issue here were made prior to litigation. We have previously applied the judicial-proceedings privilege to pre-suit statements as well as statements made within a proceeding. "As to communications preliminary to a proposed judicial proceeding, the [privilege] . . . applies only when the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by the witness or a possible party to the proceeding." *Shell Oil*, 464 S.W.3d at 655 (quoting RESTATEMENT (SECOND) OF TORTS § 588 cmt. e). Even in the pre-suit context, however, the privilege protects communications that are themselves preparatory to the lawsuit. The requirement that the statement must bear "some relation to a proceeding" cannot be stretched so far as to include publicity statements that merely address the same subject matter as the suit but serve no purpose within the suit. The statement *itself* must bear "some relation to a proceeding." *Id*. It is not enough that the statement's *subject matter* bears such a relation.

Press statements often serve an important function for the party issuing them and for the public, but they are in no way part of a judicial proceeding or preparatory to one in any formal sense. Although accurate public knowledge of what is happening in the court system is surely of great value, that value is protected by many defenses available in defamation law and ultimately by the First Amendment. *See* U.S. CONST. amend. I; TEX. CONST. art. I, § 8. The judicial-proceedings privilege, on the other hand, does not exist to promote publicity or public awareness outside the courtroom. Its purpose is to facilitate open and vigorous litigation of matters inside the courtroom. *See Collins*, 2019 WL 2292333, at *3 (The privilege promotes the "complete and

unbridled development of evidence in the settlement of disputes without fear of reprisals."). Extending the privilege to publicity statements about litigation would detach the privilege from its underlying justifications and allow parties who publicize defamatory allegations to "escape liability for [defamation] damages" just because they "ha[ve] made similar charges in [their] court pleadings." *De Mankowski*, 300 S.W. at 122.

This result is consistent with how the law typically treats other privileged communications. In general, privileged statements lose that character if the party "repeats the statements outside the protected context within which the statements originally were made." *Alaniz*, 105 S.W.3d at 341; *cf. Jordan v. Ct. of Appeals for Fourth Sup. Jud. Dist.*, 701 S.W.2d 644, 649 (Tex. 1985) (orig. proceeding) ("It is the rule in Texas that the protections afforded by a privilege are waived by voluntary disclosure of the privileged documents.").[6] We agree with the courts of appeals that have adopted similar reasoning when asked to extend the judicial-proceedings privilege to out-of-court publicity statements. *See Alaniz*, 105 S.W.3d at 341 ("[T]he absolute privilege is lost if the holder of the privilege repeats the statements outside the protected context within which the statements originally were made."); *Skeen*, 130 S.W.3d at 926 ("Although libelous statements made in connection with a judicial proceeding are absolutely privileged . . . re-publication of such statements outside of the judicial context waives the privilege."); *Levingston Shipbuilding*, 688 S.W.2d at 196–97 (same).[7]

---

[6] *See also In re JDN Real Estate-McKinney L.P.*, 211 S.W.3d 907, 922 (Tex. App.—Dallas 2006, orig. proceeding) ("The client waives the attorney-client privilege if he discloses or consents to the disclosure of any significant part of the privileged matter, unless such disclosure itself is privileged."); *In re Zavaleta*, No. 05-02-00783-CV, 2002 WL 1139300, at *1 (Tex. App.—Dallas May 31, 2002, orig. proceeding) ("[T]he disclosure of patient information waives the physician-patient privilege in the information . . . .").

[7] For the same reason that the privilege does not protect statements to the media, "applying the privilege to [a party's] emails and Facebook posts would not serve the underlying purpose of the judicial-proceedings privilege[.]"

11

We agree with the court of appeals that the delivery of the Notice Letter to Landry's and the Secretary of the Interior is protected by the judicial-proceedings privilege because it was "necessary to set the judicial machinery in motion." RESTATEMENT (SECOND) OF TORTS § 586 cmt. a; *see* 16 U.S.C. § 1540(g)(2)(A)(i) (ESA's 60-day notice requirement).[8] But the delivery of the Notice Letter itself is not at issue. The dissemination of the letter to the media along with a press release—and the defendants' other republications of their allegations for publicity purposes—are the source of Landry's complaint. As explained above, the defendants lost the judicial-proceedings privilege's protections when they repeated the Notice Letter's allegations for publicity purposes "outside the protected context within which the statements originally were made." *Alaniz*, 105 S.W.3d at 341.[9]

Our understanding of the limits of the judicial-proceedings privilege is consistent with the weight of authority outside Texas. *See* W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 114 (5th ed. 1984) ("It is clear . . . that statements given to the newspapers concerning

*Champion Printing & Copying LLC v. Nichols*, No. 03-1500704, 2017 WL 3585213, at *17 (Tex. App.—Austin Aug. 18, 2017, pet. denied); *see also Charlambopoulos v. Grammer*, No. 3:14-CV-2424-D, 2017 WL 606639, at *12–13 (N.D. Tex. Feb. 15, 2017) (refusing to apply judicial-proceedings privilege to a party's tweets).

[8] *See also Krishnan v. Law Offices of Preston Henrichson, P.C.*, 83 S.W.3d 295, 302 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied) (holding the privilege applies to notice letter delivered to required party in health care liability claim but not otherwise disseminated to public).

[9] This result is consistent with our previous decision in *Shell Oil Co. v. Writt*, 464 S.W.3d 650 (Tex. 2015), in which we extended the judicial-proceedings privilege to a report given by Shell to the Department of Justice "when Shell seriously contemplated that it was about to become a defendant in a criminal case." 566 S.W.3d at 57 n.9. Likewise here, ALDF "seriously contemplated that it was about to become a [litigant]" in an ESA case. The statements at issue in *Shell Oil*, however, were not disseminated to the media for publicity purposes. They were sent to a government agency conducting an investigation under the Foreign Corrupt Practices Act. *Shell Oil*, 464 S.W.3d at 651. We determined the privilege applied because "Shell acted with serious contemplation of the possibility that it might be prosecuted" by a government authority investigating the company when it provided the Department with a copy of an internal investigative report. *Id.* at 659. No equivalent situation exists here. ALDF publicized its allegations to the press and through social media in order to disseminate the allegations to the public. Shell, by contrast, made statements to a government agency that was conducting a law-enforcement investigation preparatory to litigation, and it did so for the purpose of defraying its liability in that anticipated proceeding.

the case are no part of a judicial proceeding, and are not absolutely privileged."); ROBERT D. SACK, SACK ON DEFAMATION: LIBEL, SLANDER, AND RELATED PROBLEMS § 8.2.1 (2004) ("[S]tatements made by parties to litigation to the public, during the course of press conferences, for example, . . . are not privileged.").[10]

In sum, the dissemination of the Notice Letter and accompanying press release to the media are not protected by the judicial-proceedings privilege. Nor does the privilege cover other publicity statements made apart from the letter, such as statements to the press, blog posts, or social media activity. *Cf. Ross v. Heard*, No. 04-04-00110-CV, 2005 WL 357032, at *3 (Tex. App.—San Antonio Feb. 16, 2005, no pet.) ("[A] defendant could not claim the privilege to avoid liability for sending out defamatory material to parties having no cognizable legal interest in pending litigation."). The court of appeals erred by dismissing Landry's claims based on the judicial-proceedings privilege.[11]

---

[10] *Jacobs v. Adelson*, 325 P.3d 1282, 1287 (Nev. 2014) ("Extension of the absolute privilege to cover statements to the media, when the media are not a party to the lawsuit or inextricably intertwined with the lawsuit, would not further the policy underlying the absolute privilege."); *Pratt v. Nelson*, 164 P.3d 366, 381 (Utah 2007) ("[W]e are disinclined to extend [the privilege] to statements made directly to the press . . . ."); *Bochetto v. Gibson*, 860 A.2d 67, 73 (Pa. 2004) ("As Gibson's act of sending the complaint to [a reporter] was an extrajudicial act that occurred outside of the regular course of the judicial proceedings and was not relevant in any way to those proceedings, it is plain that it was not protected by the judicial privilege."); *Kennedy v. Zimmermann*, 601 N.W.2d 61, 65 (Iowa 1999) ("We recognize a lawyer may occasionally be questioned by the news media . . . . Nevertheless, we believe the balancing of interests reveals this is not an occasion encountered by an attorney which requires the protection of the absolute privilege."); *Kirschstein v. Haynes*, 788 P.2d 943, 951 n.27 (Okla. 1990) ("[U]nnecessary publication to the news media may result in loss of the privilege . . . ."); *Green Acres Tr. v. London*, 688 P.2d 617, 622 (Ariz. 1984) ("The requirement[] . . . that the recipient of the extra-judicial communication have some relationship to the proposed or pending judicial proceeding for the occasion to be privileged is sound. Ordinarily the media will lack such a connection to a judicial proceeding.") (citations omitted).

[11] An amicus brief from the Freedom of Information Foundation of Texas suggests that Texas law is settled that statements by attorneys to the media about litigation are absolutely or conditionally privileged under the judicial-proceedings privilege or attorney immunity. That is not the case. Although some courts of appeals have extended these defenses to cover out-of-court publicity statements, others have not done so. *Compare supra* note 4 *with* note 5.

The amicus also points out that some states apply a "fair-notice privilege" to protect some statements attorneys make to the media. The amicus asks us to provide similar protections using the judicial-proceedings

**B.**

In addition to the judicial-proceedings privilege, ALDF and Nasser also argue that attorney immunity bars Landry's claims.[12]  As explained above, attorney immunity attaches when attorneys act on behalf of their clients in the uniquely lawyerly capacity of one who possesses "the office, professional training, skill, and authority of an attorney." *Cantey Hanger*, 467 S.W.3d at 482. While the judicial-proceedings privilege applies specifically to liability for spoken or written words, the protections of attorney immunity apply more broadly to include "actions" and "conduct" engaged in by attorneys for their clients pursuant to the attorney's "office, professional training, skill, and authority." *Id.*

The Notice Letter itself is the product of lawyerly work for a client involving "the office, professional training, skill, and authority of an attorney." *Id.*  Landry's did not sue the defendants for delivering the Notice Letter to the required entities, however.  Landry's sued the defendants for their publicity statements to the press and on social media.  Such statements, while sometimes made by lawyers, do not partake of "the office, professional training, skill, and authority of an attorney." *Id.*  Anyone—including press agents, spokespersons, or someone with no particular training or authority at all—can publicize a client's allegations to the media, and they commonly

---

privilege.  Texas's fair-notice privilege is a creature of statute, however, and the legislature has not seen fit to extend it to an attorney's statements to the media. *See* TEX. CIV. PRAC. & REM. CODE § 73.002.  The legislature's inaction in that regard does not provide a justification for extending the judicial-proceedings privilege beyond the contours of judicial proceedings.  The majority rule in American jurisdictions is that neither the judicial-proceedings privilege nor attorney immunity applies to publicity statements made outside the proceeding. *See infra* note 13.  The legislatively chosen contours of Texas's fair-notice privilege do not affect our analysis of the judicial-proceedings privilege or attorney immunity.

[12] Petitioners contend attorney immunity does not apply to ALDF because it is a nonprofit organization, not an attorney.  Because we conclude attorney immunity does not protect ALDF's publicity statements in any event, we need not address that argument.

14

do so without the protection of immunity. While lawyers can also make such statements, attorney immunity does not apply to an activity simply because attorneys often engage in that activity. Nor does it apply, as the court of appeals suggested, any time an attorney "conclude[s] that publicity would further the representation." 566 S.W.3d at 60. Some conduct by attorneys remains actionable "even if done on behalf of a client." *Youngkin*, 546 S.W.3d at 683.

There is nothing particular to "the office, professional training, skill, and authority of an attorney" about sending out press releases or disseminating potentially defamatory allegations through the media. *See Miller v. Stonehenge/Fasa-Tex., JDC, L.P.*, 993 F. Supp. 461, 463, 464 (N.D. Tex. 1998) (concluding that although attorney "may have been present as a representative of her client, [ ] her skills *as an attorney* had no role in the events that transpired"). Publicizing allegations through the media is not a lawyerly duty akin to "practic[ing] the[] profession, [ ] advis[ing] [ ] clients and interpos[ing] any defense or supposed defense." *Cantey Hanger*, 467 S.W.3d at 481. While many defenses to liability are available to attorneys who use the media to publicize their clients' allegations, the absolute defense of attorney immunity is not among them.[13]

---

[13] The widely adopted rule in other American jurisdictions is that neither the judicial-proceedings privilege nor attorney immunity protects attorneys who publicize to the media or to others unconnected with the proceeding allegations that would have been privileged within the proceeding. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 57 cmt. c (2000) ("The privilege, however, does not protect statements directed to persons not involved in the litigation, or statements having no connection with the proceeding . . . . Thus, a statement to the press is not covered by the privilege . . . ."); DAVID ELDER, DEFAMATION: A LAWYER'S GUIDE § 2:12 (2020) ("[E]xtrajudicial reiterations do not constitute actions of an attorney while performing his functions as such."); *see also, e.g.*, *Topping v. Meyers*, 842 S.E.2d 95, 104 (N.C. Ct. App. 2020); *Bedford v. Witte*, 896 N.W.2d 69, 72–73 (Mich. Ct. App. 2016); *Dempsey v. Bucknell Univ.*, 76 F. Supp. 3d 565, 582–83 (M.D. Pa. 2015); *Jacobs*, 325 P.3d at 1285; *August v. Hanlon*, 975 N.E.2d 1234, 1247–48 (Ill. App. 1st Dist. 2012); *D'Alfio v. Theuer*, No. CL10-1363, 2010 WL 7765601, at *2 (Va. Cir. Ct. Sept. 29, 2010); *Pratt*, 164 P.3d at 381; *Med. Infomatics Eng'g, Inc. v. Orthopaedics N.E., P.C.*, 458 F. Supp. 2d 716, 725 (N.D. Ind. 2006); *Cache la Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 438 F. Supp. 2d 1288, 1294 (D. Colo. 2006); *Williams v. Kenney*, 877 A.2d 277, 290–91 (N.J. Super. Ct. App. Div. 2005); *Bochetto*, 860 A.2d at 72–73; *Brown v. Gatti*, 99 P.3d 299, 304 (Or. Ct. App. 2004), *aff'd in part, rev'd in part on other grounds*, 145 P.3d 130 (Or. 2006); *Chafoulias v. Peterson*, No. C2-01-1617, 2003 WL 23025097, at *3 (Minn. Ct. App. Dec. 30, 2003); *Kennedy*, 601 N.W.2d at 64–65; *Seidl v. Greentree Mortg. Co.*, 30 F. Supp. 2d 1292, 1313–14 (D. Colo. 1998); *Arigno v. Murzin*, No. CV-960474102S, 1998 Conn. Super. LEXIS 691, at *4 (Conn.

Likewise, attorney immunity does not protect Nasser or ALDF's social media activity. Tweets and Facebook posts publicizing a client's allegations are not the actions of lawyers acting in the lawyerly capacity to which immunity attaches. Such activity may advance a client's publicity goals, but it has little to do with "the office, professional training, skill, and authority of an attorney." *Cantey Hanger*, 467 S.W.3d at 482. Nor is it "part of the discharge" of a "*lawyer's duties* in representing his or her client." *Id.* at 481 (emphasis added).

If attorney immunity protected attorneys for out-of-court republication of defamatory allegations made in a lawsuit, many of the lines carefully drawn by the judicial-proceedings privilege would be erased. The judicial-proceedings privilege deals specifically with statements connected to litigation. *See supra* at 6. Within that realm, the judicial-proceedings privilege distinguishes between statements within the litigation and statements outside of it. The former are generally privileged, while the latter generally are not.[14] Yet if attorney immunity protected all litigation-related statements by lawyers—whether the statements are made within litigation or not—there would be little need to police the boundaries of the judicial-proceedings privilege. The distinction the privilege draws between in-court and out-of-court statements would be a dead letter if any out-of-court statement thought by the lawyer to advance his client's interests enjoyed the absolute shield of attorney immunity. We decline to take so broad a view of attorney immunity.

---

Super. Feb. 6, 1998); *Rothman v. Jackson*, 57 Cal. Rptr. 2d 284, 294–95 (Ct. App. 1996); *Kirschstein*, 788 P.2d at 951 n.27; *London*, 688 P.2d at 621–23; *Sullivan v. Birmingham*, 416 N.E.2d 528, 530 (Mass. Ct. App. 1981).

[14] *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 57 cmt. c ("The privilege, however, does not protect statements directed to persons not involved in the litigation or statements having no connection with the proceeding.").

## IV.

Having decided that neither the judicial-proceedings privilege nor attorney immunity bars Landry's defamation claims, we turn to the remaining issues. In addition to dismissing Landry's defamation claims on immunity grounds, the court of appeals also dismissed Landry's claims for business disparagement and tortious interference with prospective business relations on the ground that Landry's failed to make a prima facie case of its economic damages.[15] The court of appeals concluded that Landry's failed to make a prima facie case that its alleged damages—the two lost event bookings—were caused by the defendants' disparaging statements rather than by other "'recent' publicity and controversy regarding the way in which Landry's treated the tigers." 566 S.W.3d at 63. We agree with the court of appeals on this question and therefore affirm the dismissal of the business-disparagement and tortious-interference claims.[16]

Both causes of action require Landry's to prove that the tortious conduct at issue—here, defamation—caused it to suffer economic damages. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (business-disparagement claim requires proof of "special damages to the plaintiff"); *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (claim for tortious interference with prospective business relations requires proof the "plaintiff suffered actual damage or loss").

---

[15] Landry's does not appeal the dismissal of its claims for abuse of process, trespass, or civil conspiracy. Only the defamation, business-disparagement, and tortious-interference claims—as well as the sanctions award—are at issue in this Court.

[16] The court of appeals also determined that the judicial-proceedings and attorney-immunity defenses barred Landry's business-disparagement and tortious-interference claims because those claims must be premised on a valid defamation claim. *See* 566 S.W.3d at 61 ("The existence of a valid defamation claim is the predicate for [Landry's] claims of business disparagement . . . and tortious interference with prospective business relations."). Because the judicial-proceedings privilege and attorney-immunity defenses do not bar Landry's defamation claims, those defenses likewise do not bar the business-disparagement and tortious-interference claims.

Under the TCPA, which all agree applies to Landry's claims, Landry's bore the burden to "establish[] by clear and specific evidence a prima facie case for" its actual damages, which are an "essential element of the claim[s] in question." TEX. CIV. PRAC. & REM. CODE § 27.005(c). The "clear and specific evidence" requirement means a "plaintiff must provide enough detail to show the factual basis for its claim." *Spassoff*, 520 S.W.3d at 904; *see also S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). A "prima facie" case "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d at 590. "It is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004)).

Landry's contends that it met its burden to make a prima facie case of economic damages caused by the allegedly defamatory statements. The court of appeals disagreed, concluding that the connection Landry's alleged between the defendants' particular statements and Landry's lost bookings amounted to no more than "speculation." 566 S.W.3d at 63. As Landry's sees it, the court of appeals improperly required Landry's to *negate* every other theoretical cause of its lost bookings at the outset of the case. We do not understand the court of appeals to have imposed such a burden on Landry's, however. Instead, we agree with the court of appeals that Landry's evidence fails to establish a sufficient causal connection between any particular challenged statement by the defendants and the particular lost bookings of which Landry's complains.

Landry's alleged economic damages stem from the cancellation of events by two groups, USDA Legal Support and the Danish Club of Houston. As reasons for cancelling, USDA Legal Support cited "the recent tiger controversy," and the Danish Club cited "the recent publicity about

18

the poor treatment of the tigers."  As the court of appeals observed, however, "[t]here is no evidence that members of USDA Legal Support or the Danish Club of Houston had even read an allegedly defamatory statement by [any defendant]."  *Id.* at 62–63; *see also Hurlbut*, 749 S.W.2d at 767 ("No evidence was offered of damages resulting from loss of business expected from any particular customer or prospective customer *to whom disparaging statements were made by defendants.*") (emphasis added).  Evidence proffered by Landry's demonstrates that groups other than ALDF had also complained vociferously about the tigers during the same time period.[17]  It is possible the two organizations cancelled because of the defendants' statements, but it is likewise possible that their perception of a "recent tiger controversy" came from other sources.  Landry's offered no evidence that anyone at USDA Legal Support or the Danish Club ever read the *Houston Chronicle* or ABC-Denver7 stories about the tigers, much less based their decision to cancel on statements in those stories attributed to the defendants.

A "jury cannot reasonably infer that defamation caused [ ] cancellations when the cancellations could have occurred for any number of reasons."  *Burbage v. Burbage*, 447 S.W.3d 249, 262 (Tex. 2014).  We agree with the court of appeals that vague references to the "recent controversy" or "recent publicity," standing alone, are insufficient to support a causal link between any particular statement of the defendants and the decisions made by the two organizations to do business elsewhere.  Because Landry's failed to make a prima facie showing of economic damages

---

[17] Landry's complains that the court of appeals considered evidence proffered by ALDF in deciding whether Landry's met its burden to make a prima facie case of damages.  Landry's contends that only its own evidence can be considered in the first step of the TCPA analysis.  We need not address that issue, however, because Landry's own evidence confirms the uncontested fact that the defendants' statements were not the lone source of "the recent tiger controversy."  *See, e.g.*, Declaration of Steven Howe [Former General Manager of the Downtown Aquarium in Houston] ("There have been several protests at the Downtown Aquarium in 2015 and 2016 by animal activists, including by Cheryl Conley and Lincoln Dow.").

19

in support of its business-disparagement and tortious-interference claims, we affirm dismissal of those claims.

**V.**

Landry's defamation claims remain. Because Landry's alleges the defendants' statements amounted to defamation per se, a showing of economic damages caused by the statements is not an essential element of the claim. *See In re Lipsky*, 460 S.W.3d at 593 ("Defamation per se refers to statements that are so obviously harmful that general damages may be presumed."). The court of appeals did not address whether the many challenged statements qualify as defamation per se or whether Landry's established a prima facie case for the other essential elements of a defamation claim. 566 S.W.3d at 61; *see also id.* at 80 (Jewell, J., concurring and dissenting) (concluding the challenged statements are actionable defamation per se). Instead, the court of appeals "assume[d], without deciding," that "Landry's met its burden to establish by clear and convincing evidence each essential element of its defamation claim[s]" so that it could analyze the privilege and immunity arguments. *Id.* at 57.

Because we conclude that neither the judicial-proceedings privilege nor the attorney-immunity defense applies here, we remand the defamation claims to the court of appeals to determine whether Landry's met its burden to establish by clear and convincing evidence each essential element of its defamation per se claims. *See In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 70 (Tex. 2005) ("Because this issue has not been reviewed by the courts below, we decline to reach the issue and express no opinion as to the merits of this argument.").

Landry's also challenges the sanctions awarded against it under the TCPA. The trial court imposed $450,000 in sanctions pursuant to section 27.009(a)(2) of the TCPA, but the court of

20

appeals suggested remittitur of the award to $174,486.26. 566 S.W.3d at 74. Although Landry's challenges the remitted award in this Court, resolving the sanctions dispute at this time would be premature. Because we reverse the dismissal of Landry's defamation claims, the possibility now exists that those claims will survive the TCPA motion to dismiss. If that is indeed the result on remand, the trial court's dismissal of the entire case would be reversed in part, the defamation claims would proceed, and the matter of sanctions would need to be reconsidered altogether. *Cf. In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 226 (Tex. 2016) (remanding sanctions award for reconsideration when lower court order on which it was based had been vacated in part). We decline to review the sanctions award at this time, as it is entirely possible our decision would have no effect on the ultimate outcome.

**VI.**

The judgment of the court of appeals is reversed in part and affirmed in part, and the case is remanded to the court of appeals for further proceedings consistent with this opinion.

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** May 21, 2021

21